STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. ROBERT A. HERMANN AND FREDERICK W. JONES, DEFENDANTS-APPELLANTS.

Argued January 23, 1979—Decided May 24, 1979.

123

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

*Mr. Oscar W. Rittenhouse,* Hunterdon County Prosecutor, argued the cause for appellant, State of New Jersey.

*Mr. Alan Dexter Bowman,* Deputy Attorney General, argued the cause for *amicus curiae* Attorney General (*Mr. John J. Degnan,* Attorney General of New Jersey, attorney pro se; *Mr. Bowman, Mr. John DeCicco* and *Mr. Edwin H. Stern,* Deputy Attorneys General, of counsel).

*Mr. Donald W. Morrow* argued the cause for appellant Hermann (*Messrs. Morrow* and *Benbrook,* attorneys).

*Mr. C. Douglas Reina* argued the cause for appellant Jones (*Messrs. Abrams, Dalto, Gran, Hendricks and Reina,* attorneys).

*Mr. John S. Redden,* Assistant Essex County Prosecutor, submitted a brief on behalf of *amicus curiae* New Jersey Prosecutors Association (*Mr. Donald S. Coburn,* Essex County Prosecutor, attorney).

*Mr. Alan Silber* argued the cause as *amicus curiae pro se.*

The opinion of the court was delivered by

PASHMAN, J. In *State v. Leonardis,* 73 *N. J.* 360 (1977) (*Leonardis II*), we held that our trial courts possessed the power to order a defendant enrolled in a county pretrial intervention program (PTI) over the objections of the prosecutor if the defendant could "clearly and convincingly" demonstrate that the prosecutor's veto constituted a "patent and gross abuse of his discretion." *Id.* at 382. We also noted that in order that the goals underlying PTI not be subverted through wholesale diversions, prosecutorial decisions approving admission into the program would also be subject to "meaningful" judicial review. *Id.* at 375. However, because the factual pattern presented in *Leonardis II* did not involve an instance of prosecutorial consent to PTI diver-

sion, we were not required to specify the standards to be utilized by trial judges in undertaking this "meaningful" review. In this case, we are called upon to delineate those standards.

The facts of the present controversy are not in dispute. At the time of the events to be described below, defendants Robert Hermann and Frederick Jones were employed as teachers at Hunterdon Central High School in Flemington. On June 30, 1977, Hermann was indicted for the knowing receipt and possession of stolen property valued in excess of $200 (*N. J. S. A.* 2A:139-1) and Jones was charged with willingly aiding and abetting the commission of the crime (*N. J. S. A.* 2A:85-14). Specifically, the State alleged that on April 6, 1977, a student at Hunterdon Central High had sold to Hermann lumber which had been pilfered from a construction site in Hunterdon County, and that Jones had deliberately referred the student to Hermann in order to facilitate the consummation of the sale.

In June of 1977, both defendants applied for admission to the Hunterdon County PTI program. After reviewing their respective submissions, the program coordinator recommended that their applications be approved. The prosecutor concurred in the coordinator's conclusions, and on September 2, 1977 consented to the PTI diversion of Hermann and Jones.

This prosecutorial consent was given despite the contrary opinions of both Raritan Township's Director of Public Safety and Hunterdon Central High School's Board of Education. The Board and the Public Safety Director believed that the "sensitive" nature of defendants' employment mandated that defendants stand trial and be convicted or acquitted of the charged offenses. PTI diversion, they maintained, would "leave the impression with young people that breaking the law is an acceptable practice" as well as "negate [defendants'] effect as disciplinarians" within the school system.

On October 25, 1977, the prosecutor's decisions to divert were submitted to a trial judge for approval. Despite his conclusion that these determinations "were not arbitrary or capricious," the judge rejected both applications. In his view, a court reviewing a prosecutorial decision approving PTI admission was entitled to exercise "judicial discretion." Finding that the crimes with which defendants were charged constituted breaches of the special trust reposed in them as school teachers by parents and the public at large, *see Guideline* 3(i)(4), he concluded that, in the interests of justice, defendants should stand trial and "be subjected not only to the rehabilitation portion of the sentencing process (of which PTI may be considered * * * a substitute) but also to the punitive and deterrent aspects thereof."

On June 27, 1978, the Appellate Division affirmed the trial court's decision. *State v. Hermann,* 160 *N. J. Super.* 283 (App. Div. 1978). In its view, the "patent and gross abuse of discretion" standard of review enunciated in *Leonardis II* was applicable solely to situations in which a prosecutor rejects a defendant's PTI application. Where, as here, the prosecutor has consented to enrollment, the appellate court concluded that the prosecutorial decision must be more closely scrutinized and could be overturned should a trial judge determine, as had the judge in the present case, that PTI diversion would be contrary to the "interests of justice." We granted the motions filed by defendants and the State for leave to appeal. We now reverse.

I

Resolution of the issue here presented must begin with an examination of the reasoning which led to our holding in *Leonardis II.* In that case, we ruled, *inter alia,* that judicial review of the determinations made by program coordinators and prosecutors pursuant to *R.* 3:28 and the PTI Guidelines does not contravene the constitutional requirement of separation of powers. Nonetheless, we narrowly restricted

the scope of the review that would be undertaken of prosecutorial refusals to consent to PTI enrollment. As we emphasized, a court would overturn such prosecutorial vetoes only if a defendant "clearly and convincingly establish[ed] that the prosecutor's [determination] was based on a patent and gross abuse of his discretion." 73 *N. J.* at 382.

Two reasons underlay our decision to circumscribe the scope of review of a prosecutorial veto. First, we recognized that in other contexts judicial interference with prosecutorial decisionmaking has traditionally been limited to instances in which the prosecutor's conduct could be characterized as "arbitrary." *See* 73 *N. J.* at 377. Second, we emphasized that one of the motivating forces behind our adoption of *R.* 3:28 was that of providing *prosecutors* with alternatives to theretofore available criminal processes. *Id.* at 381. Consequently, we concluded that great deference must be accorded the prosecutor's decision in PTI matters.

■■ Although *Leonardis II* involved judicial review of a prosecutorial refusal to divert, the above reasoning is equally applicable in contexts in which he consents to PTI enrollment. We have long held that a prosecutor is vested with broad discretionary powers in the discharge of the manifold responsibilities of his office. *See, e. g., In re Investigation Regarding Ringwood Fact Finding Comm.*, 65 *N. J.* 512, 516–517 (1974); *State v. Laws*, 51 *N. J.* 494, 510–511 (1968), *cert.* den., 393 *U. S.* 971, 89 *S. Ct.* 408, 21 *L. Ed.* 2d 384 (1968). This discretion includes both the decision to prosecute an individual whom he has probable cause to believe has violated the law, and the converse decision to refrain from prosecuting any such offender. *See, e. g., State v. Laws, supra,* 51 *N. J.* 511; *State v. LeVien,* 44 *N. J.* 323, 326–327 (1965); *State v. Winne,* 12 *N. J.* 152, 172–173 (1953). While we have frequently noted that this discretion is neither unbridled nor absolute, we have also continuously stressed that judicial nullification of prosecutorial determinations is limited to cases of "arbitrariness or abuse." *In re Investigation Regarding Ringwood Fact Finding Comm.,*

*supra,* 65 *N. J.* at 516; *see, e g., State v. LeVien, supra; State v. Laws, supra.* And this is so, regardless of whether his decision has been made pre- or post-indictment. *See State v. Ashby,* 43 *N. J.* 273 (1964).

■ There is no apparent reason why a prosecutor's decision to consent to PTI diversion should be subject to any less judicial deference. Indeed, the goals underlying our adoption of *R.* 3:28 compel the conclusion that even greater deference be given this decision than that espoused in the foregoing cases. For as emphasized in both *Leonardis* opinions, one of the chief aims of PTI is that of augmenting the options available to *prosecutors* confronted with instances of criminal misconduct. *See Leonardis II, supra,* 73 *N. J.* at 381; *State v. Leonardis,* 71 *N. J.* 85, 93 (1976) (*Leonardis I*).

■ Consequently, we are of the opinion that the standards of judicial review enunciated in *Leonardis II* are applicable whether the prosecutor's decision is in favor of or against PTI enrollment. Thus, in order for a trial court to overturn a prosecutorial decision admitting an applicant to PTI, it must clearly be convinced that the prosecutor's determination constitutes a patent and gross abuse of his discretion.

## II

■ In the present case, the trial judge expressly found that the prosecutorial determinations were not "arbitrary or capricious." Having conducted an independent review of the materials submitted by defendants, we conclude that the trial court's conclusion in this regard was correct. This is not to say that we in any way approve of the conduct allegedly engaged in by defendants, or that we would necessarily find defendants entitled to enrollment were we making a decision *de novo.* We merely hold that the prosecutor's resolution of this matter did not constitute a patent and gross abuse of his discretion.

Accordingly, the judgment of the Appellate Division is reversed, and defendants' applications for admission to the Hunterdon County PTI program are hereby approved.

*For reversal*—Chief Justice HUGHES and Justices MOUNTAIN, JACOBS, PASHMAN, CLIFFORD, SCHREIBER and HANDLER —7 .

*For affirmance*—none.