673 A.2d 1379

STATE OF NEW JERSEY, PLAINTIFF, v.
PAULO A. LOPES, DEFENDANT.

Superior Court of New Jersey
Law Division Criminal Part
Bergen County

Decided September 1, 1995.

464

*Charles R. Buckley*, Deputy Attorney General—In Charge, Acting Bergen County Prosecutor, for plaintiff (*Daniel J. Fitz-Patrick*, Special Deputy Attorney General, Acting Assistant Prosecutor, of counsel).

*Frank W. Jablonski* for defendant (*Gillespie, Gillespie & Jablonski*, attorneys).

PARSONS, Jr., J.S.C.

By way of timely motion, the defendant, Paulo A. Lopes, challenges the judicially-appointed Pretrial Intervention program director's denial of his application for admission into the Pretrial Intervention program (PTI). Because the prosecutor consents to the defendant's admission into PTI while the PTI program director (PTI director or program director) opposes his participation in it, the court must decide this case according to the standard of review applicable to a PTI program director's decision whether to admit a defendant into PTI. Before discussing the nature of the applicable standard of review, however, the court must give the following factual backdrop.

## I. *Findings of Fact*

On October 8, 1993, a van approached two children in Lyndhurst. The defendant, a passenger in the van, told one of the youngsters that the child's father (a local police officer) had sent him to pick up the child and bring him home for dinner. The child was not asked to get into the van and no attempt was made by anyone to get out of the van to grab the child in order to put him into the vehicle.

Pursuant to Bergen County Indictment S–389–94, the defendant was charged with two counts (against separate victims) of third degree attempted involuntary servitude (*N.J.S.A.* 2C:5–1 and *N.J.S.A.* 2C:13–2). On April 29, 1994, the defendant applied for admission into PTI. On May 6, of that year, the State of New Jersey, through Acting Assistant Prosecutor Danielle Grootenboer, denied the defendant's application for admission, citing various factors. Thereafter, on May 17, the PTI program director, through Michael Nunno, also denied the defendant's application. The program director's "Denial Notice" contains check marks next to the following factors:

(1) beyond the scope of PTI, *R.* 3:28, Guideline 1–d;

(2) no causal connection between the offense charged and the need for rehabilitative services, *R.* 3:28, Guideline 1e;

(3) offense was committed with violence or the threat of violence, *R.* 3:28, Guideline 3i3;

(4) admission to PTI would deprecate the serious nature of the offense, *R.* 3:28, Guideline 3i;

(5) the nature of the offense, *N.J.S.A.* 2C:43–12e(1);

(6) the needs and interest of the victim and/or society would not be met by PTI enrollment of this defendant, *N.J.S.A.* 2C:43–12e(7);

(7) the crime is of such a nature that the value of supervisory treatment would be outweighed by the public need for prosecution, *N.J.S.A.* 2C:43–12e(14); and

(8) "other", which, in this particular case, focuses on how children were allegedly involved in the charged offenses.

Aside from repeated references to the alleged involvement of children in the charged offenses (which seems of slight relevance once it is noted that the statute governing the crime allegedly attempted contains no special provisions for the protection of

children), the PTI director's denial notice merely "parrots" the relevant statutes, rules, and guidelines.

The defendant urged the State to reconsider its position. The State agreed to reconsider the defendant's application and, after review of a newly submitted psychological report, decided to consent to the defendant's admission into PTI on November 22, 1994. Nevertheless, the program director continued to disagree with the defendant's admission into PTI.

The defendant timely moved to challenge the program director's denial of his application and a hearing was scheduled. In support of his application, the defendant submitted papers wherein, citing *State v. Rosario*, 237 *N.J.Super.* 63, 566 *A.*2d 1173 (App.Div.1989), *certif. denied*, 122 *N.J.* 139, 584 *A.*2d 212 (1990), he emphasized that the program director focused on the nature of the offense to the exclusion of other relevant factors. As such, defense counsel attempted to highlight his client's personal character and qualities by noting that the defendant, who is gainfully employed, is married and lives with his wife and two young children. In addition, counsel indicated that, before the instant indictment, the defendant had never been charged with or convicted of any offense. Finally, defense counsel attacked the program director's evaluation of the nature of the offense by noting that the alleged incident did not involve violence or even the threat thereof.

At the hearing, the prosecutor stated that "the PTI program [director's decision] is wrong." The PTI director's representative again restated the PTI director's emphasis upon the alleged facts of the case. In response, the court repeatedly attempted to elicit, from the PTI director, a factual basis for his choice of the applicable factors. For the most part, however, the court's attempts bore no fruit. Indeed, upon questioning by the court as to the factual basis for factor number (3) above (concerning violence or the threat of violence), the PTI director, upon further reflection, decided to remove it as inappropriate. The program director also agreed to re-evaluate the defendant's application in light of

the psychological report submitted by the defendant. Accordingly, the court reserved decision on the matter.

Upon consideration of the psychological report submitted by the defendant, the program director again rejected the defendant's application for admission to PTI.[1] Consequently, the court held a hearing on the PTI director's renewed refusal to recommend the defendant's admission to PTI. At that hearing, the PTI director again failed to give a factual basis for his choice of factors, save for repeated references to the involvement of children in the alleged incident.

## II.  Legal Analysis

### A.  Separation of Powers

#### 1.  Generally

By virtue of its constitutional authority to "make rules governing the ... procedure in all ... courts", *N.J. Const.*, art. VI, § II, ¶ 3, the Supreme Court created the Pretrial Intervention program in 1970 by way of *R.* 3:28. *State v. Leonardis*, 71 *N.J.* 85, 103, 363 *A.*2d 321 (1976) (*Leonardis I* ); *State v. Leonardis*, 73 *N.J.* 360, 368–369, 375 *A.*2d 607 (1977) (*Leonardis II* ). After its decision in *Leonardis I, supra*, 71 *N.J.* at 97–98, 363 *A.*2d 321, the Court, pursuant to its rulemaking authority, promulgated statewide guidelines for the implementation of PTI. In 1979, the Legislature, by virtue of its authority over the substantive aspect of criminal law, enacted "a statewide program of pretrial intervention" that "generally mirrored the procedures and guidelines previously established under *Rule* 3:28." *State v. Nwobu,* 139 *N.J.* 236, 245, 652 *A.*2d 1209 (1995); *see N.J.S.A.* 2C:43–12.

The result of this activity is a system where judicial, executive, and legislative powers overlap, creating separation of

---

[1] This renewed rejection was by way of letter dated May 17, 1995.

powers issues.[2] *See generally N.J. Const.* art. III, ¶ 1 (separation of powers provision of our state constitution). A good example of such an overlap of power is the matter before this court: the decision whether to admit a defendant to PTI. This choice entails a quasi-judicial decision, *Leonardis II, supra*, 73 *N.J.* at 376, 375 *A.2d* 607, made by a judicially-appointed program director and a county prosecutor (who performs an executive charging function) according to factors created by statute, legislative-type acts of the judicial branch, and case law. Indeed, "[a]lthough pretrial diversion is by its nature part of the prosecutor's charging function, the statutes, procedures, and guidelines involve the judiciary in the administration of PTI." *Nwobu, supra*, 139 *N.J.* at 245, 652 *A.2d* 1209.

While the overlap of power in the PTI area may at first seem objectionable on separation of powers grounds, it is not violative of that doctrine because it does not require an absolute division of power among the three branches. *Leonardis II, supra*, 73 *N.J.* at 369–375, 375 *A.2d* 607. Indeed, the doctrine of separation of powers is only designed to "prevent a single branch from claiming or receiving inordinate power ... [and] necessarily assumes the branches will coordinate to the end that government will fulfill its mission." *Brown v. Heymann*, 62 *N.J.* 1, 11, 297

---

[2] In the area of criminal law, the Supreme Court's constitutionally-based rulemaking power embraces matters of "procedure" while the Legislature's statute-making authority concerns matters of "substance". *Leonardis II, supra*, 73 *N.J.* at 372, 375 *A.2d* 607. Incidentally, the Supreme Court's rulemaking authority also touches upon PTI because this authority includes the power to "'review the operation of court initiated procedures and to review the legal determinations made pursuant to these procedures.'" *Nwobu, supra*, 139 *N.J.* at 245, 652 *A.2d* 1209 (quoting *Leonardis I, supra*, 71 *N.J.* at 109, 363 *A.2d* 321). In addition, because PTI is considered to be a "remedial aspect of a criminal proceeding," *Leonardis II, supra*, 73 *N.J.* at 369–370, 375 *A.2d* 607, its operation is also embraced by the "judicial power" granted to the Supreme Court by the New Jersey Constitution. *N.J. Const.* art. VI, § I, ¶ 1; *Leonardis II, supra*, 73 *N.J.* at 369–370, 375 *A.2d* 607. In any event, the Executive's function under PTI is its responsibility to enforce the laws, which necessarily implicates the exercise of "prosecutorial prerogative", e.g., discretion whether to prosecute certain crimes. *State v. Dalglish*, 86 *N.J.* 503, 513, 432 *A.2d* 74 (1981).

*A*.2d 572 (1972). Accordingly, the type of cooperative action among co-equal branches of government represented by the creation and implementation of PTI is not only cognizable under the doctrine of separation of powers, but such cooperation is one of the doctrine's primary goals.[3] *Leonardis II, supra,* 73 *N.J.* at 372, 375 *A.*2d 607.

Nevertheless, the different branches of government sometimes seek to implement PTI in different ways. In this case, for example, there is a disagreement between the prosecutor (who wishes to utilize the PTI option) and the PTI director (who refuses to recommend·the defendant's admission into the program). In order to forestall such conflict as. much as possible, the law recognizes another aspect of the doctrine of separation of powers:

---

[3] Such cooperation has been demonstrated time and again in the PTI context. For example, before the Legislature passed the PTI statute, the Supreme Court stated that "[i]t is not our desire to inhibit legislative action in this sphere; on the contrary, we welcome it." *Leonardis II, supra,* 73 *N.J.* at 374–375, 375 *A.*2d 607. Moreover, *R.* 3:28 and *N.J.S.A.* 2C:43–12e, each state that a program director may recommend a defendant's participation in PTI and that a prosecutor may consent to such participation. Another example is the Legislature's admonishment that prosecutors and program directors consider, "among others", *the statutory factors for admission to PTI*—intimating that factors enunciated by court rules, guidelines, and decisions should also be analyzed. *N.J.S.A.* 2C:43–12e. Yet another example of cooperation is contained in Guideline 3 to *R.* 3:28, which mandates that an evaluation of a defendant's application to PTI include consideration of the factors contained in *N.J.S.A.* 2C:43–12(e). Still another example is *R.* 3:28(a), which states that "[e]ach Assignment Judge shall designate a judge or judges to act on all matters pertaining to pretrial intervention programs in the vicinage in accordance with N.J.S.A. 2C:43–12 and –13...." A final example of inter-branch cooperation in the PTI area is contained in *N.J.S.A.* 2C:43–12d, which states that "[i]f an applicant desires to challenge the decision of the prosecutor or program director not to recommend enrollment in a program of supervisory treatment the proceedings prescribed under section 14 shall be followed." In turn, *N.J.S.A.* 2C:43–14 states that "[t]he Supreme Court may adopt rules dealing with Supervisory treatment in accordance with procedures herein set forth." Far from engendering conflict, then, the confluence of the three coordinate branches of State government in the PTI area has caused cooperation to be the overwhelming rule and dissent (like that evidenced by the instant disagreement between the program director and prosecutor) to be the minuscule exception.

the concept of deference to a co-equal branch of government. As discussed below, judicial deference to the prosecutor's executive charging function greatly influenced the Supreme Court's articulation of the "enhanced deference" standard of judicial review applicable to a prosecutor's decision concerning a defendant's application for admission to PTI. However, also for reasons to be enunciated below, the "enhanced deference" standard of review is inapplicable to the PTI director's choice, because the PTI director is an agent of the judicial branch who does not perform an executive-type prosecutorial charging function.

## 2. Standards of Review

### a. The Prosecutor's Decision

The standard of review applicable to a prosecutor's decision whether to admit a defendant to PTI was first enunciated in *Leonardis II, supra,* 73 *N.J.* at 382, 375 *A.2d* 607. There, the Court stated that Guidelines 8 and 3(i), of *R.* 3:28, interpreted together, mandate that a defendant, to secure a reversal of the prosecutor's decision, must "clearly and convincingly establish that the prosecutor's refusal to sanction admission into the program was based on a patent and gross abuse of his discretion."[4] *Ibid.; Nwobu, supra,* 139 *N.J.* at 246–247, 652 *A.2d* 1209; *see also State v. Hermann,* 80 *N.J.* 122, 127–128, 402 *A.2d* 236 (1979) (patent and gross abuse of discretion standard also applies to prosecutor's

---

[4] This standard of judicial review is the operative one. The standard contained in Guideline 2 to *R.* 3:28 is designed to apprise the defendant of the nature of the proof that should be submitted to the PTI director or prosecutor in conjunction with his motion for judicial review. According to Guideline 2, "[t]he applicant shall ... have the opportunity to present to the criminal division manager, and through the criminal division manager to the prosecutor, any facts or materials demonstrating the defendant's amenability to the rehabilitative process, showing compelling reasons justifying admission, and establishing that a decision against enrollment would be arbitrary and unreasonable." *R.* 3:28, Guideline 2. The comment to Guideline 2 adds that "[t]he presentation of this material should be done concurrently with the filing of a motion under guideline 8 for review of a decision by a criminal division manager not to recommend or of a prosecutor not to consent to enrollment."

decision to admit defendant to PTI). Accordingly, the standard of review of a prosecutor's action requires not only a clear and convincing showing of an "abuse of discretion", but also a clear and convincing showing that such "abuse of discretion" was "patent and gross." Moreover, because the defendant bears the burden of persuasion, "[a] reviewing court must assume, absent evidence to the contrary, that the prosecutor's office has considered all relevant factors in making the PTI decision." *Nwobu, supra*, 139 *N.J.* at 249, 652 *A.*2d 1209. This gloss on the standard of review enunciated in Guideline 8 to *R.* 3:28 has been characterized as "enhanced deference" or "extra deference". *Nwobu, supra*, 139 *N.J.* at 246, 652 *A.*2d 1209 (quoting *State v. Kraft*, 265 *N.J.Super.* 106, 110–112, 625 *A.*2d 579 (App.Div.1993)). Consistent with the concept of "enhanced deference", judicial review exists to "check only the most egregious examples of injustice and unfairness." *Ibid.* This elevated standard of review stems from the "need to preserve prosecutorial discretion in deciding whether to divert a particular defendant from the ordinary criminal process...." *Nwobu, supra*, 139 *N.J.* at 246, 652 *A.*2d 1209; *Dalglish, supra*, 86 *N.J.* at 509, 432 *A.*2d 74; *Kraft, supra*, 265 *N.J.Super.* at 111, 625 *A.*2d 579. Indeed, prosecutorial discretion in the PTI context is critical for two reasons: (1) it is the fundamental responsibility of the prosecutor to decide whom to prosecute; and (2) it is a primary purpose of PTI to augment, not diminish, the prosecutor's options. *Ibid.* For these reasons, the PTI decision "lies, in the first instance, with the prosecutor...." *Nwobu, supra*, 139 *N.J.* at 246, 652 *A.*2d 1209.

Turning to the "abuse of discretion" prong of the applicable standard of review, the Supreme Court has interpreted that standard to mean that a defendant must clearly and convincingly show that the prosecutor's decision:

(a) failed to consider all relevant factors;

(b) was based on irrelevant or inappropriate factors; or

(c) constituted a clear error of judgment.

[*See Nwobu, supra*, 139 *N.J.* at 247, 652 *A.*2d 1209 (citing *State v. Bender*, 80 *N.J.* 84, 93, 402 *A.*2d 217 (1979)) ]

██ In considering whether an "abuse of discretion" is "patent and gross", the court must decide whether the defendant clearly and convincingly established that the alleged prosecutorial error would "clearly subvert" the goals underlying PTI. *Nwobu, supra,* 139 *N.J.* at 247, 652 *A.*2d 1209 (citing *Bender, supra,* 80 *N.J.* at 93, 402 *A.*2d 217). These goals are:

(1) to enable defendants to avoid ordinary prosecution by receiving early rehabilitative services expected to deter future criminal behavior;

(2) to provide defendants who might be harmed by the imposition of criminal sanctions with an alternative to prosecution expected to deter criminal conduct;

(3) to avoid burdensome prosecutions for victimless offenses;

(4) to relieve overburdened criminal calendars so that resources can be expended on more serious criminal matters; and

(5) to deter future criminal behavior of PTI participants.

[*See Nwobu, supra,* 139 *N.J.* at 247, 652 *A.*2d 1209; *R.* 3:28, Guideline 1; *N.J.S.A.* 2C:43–12a]

██ Concerning the applicable remedies, if the prosecutor fails to consider all relevant factors or considers irrelevant factors, "a court may remand the matter for further consideration." *Nwobu, supra,* 139 *N.J.* at 247, 652 *A.*2d 1209. On the other hand, if "the prosecutor commits a clear error of judgment, a court may order that a defendant be enrolled in PTI." *Ibid.* The court notes that the Supreme Court utilized permissive language in phrasing each of these options. Notwithstanding such flexibility, however, a court's remedial choice must be consistent with the overriding principle that a court should not, absent an abuse of discretion that clearly subverts the goals of PTI, substitute its judgment for that of the prosecutor.

██ Because a court's review is limited to the reasons given by the prosecutor for his or her decision, the written statement of reasons mandated by *R.* 3:28, Guideline 8, is critical. Indeed, such a statement serves four purposes:

(1) it facilitates effective judicial review;

(2) it assists in evaluating the success of the PTI program;

(3) it affords the defendant the opportunity to prepare a response; and

(4) it dispels suspicions of arbitrariness.

[*See Nwobu, supra,* 139 *N.J.* at 249, 652 *A.*2d 1209]

Accordingly, a prosecutor's statement of reasons must not "simply 'parrot' the language of relevant statutes, rules and guidelines." *Ibid.* At a minimum, the prosecutor should note the factors present which led him to conclude that admission should be denied. In addition, the prosecutor's reasons must be stated with "sufficient specificity so that defendant has an opportunity to demonstrate they are unfounded." *Ibid; see also R.* 3:28, Guideline 8. Implicit in this "sufficient specificity" requirement is a mandate that the prosecutor give a factual basis for his "parroting" of the guidelines. *See State v. Sutton,* 80 *N.J.* 110, 116–117, 402 *A.*2d 230 (1979); *State v. Atley,* 157 *N.J.Super.* 157, 163–164, 384 *A.*2d 851 (App.Div.1978). Where such "parroting" occurs without an accompanying factual basis therefor, "suspicions of arbitrariness", *Nwobu, supra,* 139 *N.J.* at 249, 652 *A.*2d 1209, are heightened rather than dispelled.

### b. The PTI Director's Decision

Unlike the many cases that discuss a prosecutor's refusal to consent to the defendant's admission to PTI, the court has discovered only one case that explains the nature of the "abuse of discretion" standard of review as applied to the PTI director's refusal to recommend a defendant to PTI.

In *State v. Imbriani,* 280 *N.J.Super.* 304, 306, 654 *A.*2d 1381 (Law Div.1994), a negotiated plea agreement provided that the State would not oppose the defendant's application for admission into PTI. Subsequently, however, the program director rejected the defendant's application. Following the defendant's appeal to the Law Division, the State decided to take no position. However, the court "requested that the Attorney General [*i.e.,* the State] either consent to or oppose the defendant's appeal because of the resulting difference in the applicable standard of review." *Imbriani, supra,* 280 *N.J.Super.* at 305–306, 654 *A.*2d 1381. The State then decided to oppose the defendant's admission to PTI. In response to the State's opposition to his application, the defendant argued that the State was in violation of the plea agreement. Faced with this situation, the court decided not to enter the

"thorny thicket" concerning the State's change in position. Instead, it decided the case according to the standard of review applicable to the program director's decision, which the court termed "more liberal" (vis-a-vis the court's ability to reverse a PTI decision) than the "patent and gross abuse of discretion" standard applicable to the prosecutor's decision. The court aptly characterized this standard of review, which is set forth in the plain language of *R.* 3:28, Guideline 8, as "arbitrary action on the part of the Program Director which would constitute an abuse of the discretion vested in him." *Imbriani, supra,* 280 *N.J.Super.* at 306, 654 *A.*2d 1381. The court then held that the program director did not abuse his discretion in denying the defendant's application for admission into PTI.

This court is in substantial agreement with the analysis contained in the *Imbriani* case which, while not binding precedent, is persuasive authority. *State v. Machuzak,* 227 *N.J.Super.* 279, 281, 546 *A.*2d 1099 (Law Div.1988). However, because the PTI decision in *Imbriani* would have passed muster under either standard of review, that court was not compelled to embark upon an expanded discussion of the distinctions between the two standards. *Imbriani, supra,* 280 *N.J.Super.* at 306–307, 654 *A.*2d 1381. In contrast, the prosecutor in this case consents to the defendant's admission to PTI, while the program director opposes his application. Thus, the court must base its decision solely upon the standard of review applicable to a program director's decision. Accordingly, this court feels constrained to expand upon the *Imbriani* analysis.

A defendant who challenges a PTI decision must do so pursuant to *R.* 3:28, Guideline 8, which provides that:

> [t]he [defendant's] challenge is to be based on alleged arbitrary or capricious action, and the defendant has the burden of showing that the program director ... abused his discretion in processing the application.

Since the above language is devoid of any suggestion of "enhanced deference" to the PTI director's decision (*e.g.,* that an "abuse of discretion" be "patent and gross" or that the defendant meet the

"clear and convincing" burden of persuasion), the only way it can be engrafted upon the rule is through amendment of the rule or interpretive case law. *Cf. Nwobu, supra,* 139 *N.J.* at 245, 652 *A.*2d 1209 (citing *Leonardis I, supra,* 71 *N.J.* at 109, 363 *A.*2d 321). To the court's knowledge, however, all cases that have applied the "enhanced deference" gloss to *R.* 3:28, Guideline 8, did so in the context of a prosecutor's decision whether to consent to the defendant's admission to PTI. *See generally Nwobu, supra,* 139 *N.J.* at 246, 652 *A.*2d 1209; *Dalglish, supra,* 86 *N.J.* at 509, 432 *A.*2d 74; *Kraft, supra,* 265 *N.J.Super.* at 111, 625 *A.*2d 579; *Leonardis II, supra,* 73 *N.J.* at 368–369, 375 *A.*2d 607; *Bender, supra,* 80 *N.J.* at 93, 402 *A.*2d 217. Indeed, each of these cases carefully limited its discussion of the various elements of "enhanced deference" to a prosecutor's decision whether to admit a defendant to PTI. This is because the "patent and gross" and "clear and convincing" requirements were added to *R.* 3:28 to alleviate concerns regarding unwarranted judicial interference with prosecutorial prerogative. *Kraft, supra,* 265 *N.J.Super.* at 110, 625 *A.*2d 579 (citing *Dalglish, supra,* 86 *N.J.* at 513, 432 *A.*2d 74); *Rosario, supra,* 237 *N.J.Super.* at 65–68, 566 *A.*2d 1173. Because such separation of powers concerns are irrelevant to a decision made by a judicially-appointed agent of the courts, *Rosario, supra,* 237 *N.J.Super.* at 66 n. 2, 566 *A.*2d 1173, the "enhanced deference" applicable to prosecutorial decisions is inapposite in the context of a PTI director's decision whether to recommend a defendant for PTI. Accordingly, the court holds that a PTI director's decision whether to admit a defendant to PTI must be evaluated according to the standard of review set forth in the plain language of *R.* 3:28, Guideline 8. Thus, in order to overturn the PTI director's decision, the defendant must establish "arbitrary [or capricious] action on the part of the [p]rogram [d]irector which would constitute an abuse of the discretion vested in him." *Imbriani, supra,* 280 *N.J.Super.* at 306, 654 *A.*2d 1381; *R.* 3:28, Guideline 8. Moreover, because the court rule only states that the "defendant has the burden of showing that the program director ... abused his discretion," *R.* 3:28, Guideline 8, the defendant's

burden of persuasion is something less than the "clear and convincing" standard added to the rule by virtue of judicial opinions exhibiting deference to a prosecutor's executive decision whether to prosecute a defendant. A perusal of the Rules of Evidence indicates that the only lesser standard is a "preponderance of the evidence." *See N.J.R.E.* 101(b)(1). Consequently, the court further holds that the burden on the defendant in this context is a "preponderance of the evidence" rather than the "clear and convincing" standard that comprises part of the "enhanced deference" accorded to prosecutorial decisions. The court is aware that these holdings seem to undercut the authority of the program director. However, because he is an agent of the courts, *see Rosario, supra,* 237 *N.J.Super.* at 66 n. 2, 566 *A.*2d 1173, a contrary result would permit the tail to wag the dog.

The court now turns to the nature of the applicable standard of review. For a PTI director's decision to constitute "arbitrary or capricious" conduct amounting to an "abuse of discretion", the defendant must demonstrate that the PTI director:

(a) failed to consider all relevant factors;

(b) was based on irrelevant or inappropriate factors; or

(c) constituted a clear error of judgment.

[*See Nwobu, supra,* 139 *N.J.* at 247, 652 *A.*2d 1209 (citing *Bender, supra,* 80 *N.J.* at 93, 402 *A.*2d 217)]

Concerning applicable remedies, if the PTI director fails to consider all relevant factors or considers irrelevant factors, "a court may remand the matter for further consideration." *Nwobu, supra,* 139 *N.J.* at 247, 652 *A.*2d 1209. On the other hand, if the PTI director "commits a clear error of judgment, a court may order that a defendant be enrolled in PTI." *Ibid.* As noted earlier, while both of these remedial options contain permissive language, a court's remedial choice must be consistent with the overriding principle that a court should not, absent "arbitrary or capricious" conduct amounting to an "abuse of discretion", substitute its judgment for that of the PTI director.

■ Finally, it should be noted that, like the court or prosecutor, the PTI director must give a written statement of reasons for any decision he or she makes. *R.* 3:28, Guideline 8. Indeed, such a statement serves four important purposes:

(1) it facilitates effective judicial review;

(2) it assists in evaluating the success of the PTI program;

(3) it affords the defendant the opportunity to prepare a response; and

(4) it dispels suspicions of arbitrariness.

[*Nwobu, supra,* 139 *N.J.* at 249, 652 *A.*2d 1209]

Accordingly, the statement of reasons must not "simply 'parrot' the language of relevant statutes, rules and guidelines." *Ibid.* At a minimum, the program director should note the factors present which led him to conclude that admission should be denied. Furthermore, the PTI director's reasons must be stated with "sufficient specificity so that defendant has an opportunity to demonstrate they are unfounded." *Ibid.; see also R.* 3:28, Guideline 8. Implicit in this "sufficient specificity" requirement is a mandate that the PTI director give a factual basis for his "parroting" of the guidelines. *See Sutton, supra,* 80 *N.J.* at 116–117, 402 *A.*2d 230; *Atley, supra,* 157 *N.J.Super.* at 163–164, 384 *A.*2d 851. Finally, as noted above, where such "parroting" occurs without an accompanying factual basis therefor, "suspicions of arbitrariness", *Nwobu, supra,* 139 *N.J.* at 249, 652 *A.*2d 1209, are heightened rather than dispelled.

### B. Application of the Law to the Case at Bar

■ Here, the defendant was charged with two counts of third degree attempted involuntary servitude because he allegedly told one of two youngsters that the child's father (a local police officer) had sent him to pick up the child and bring him home for dinner. Importantly, the child was not asked to get into the van and no attempt was made by anyone to get out of the van to grab the child in order to put him into it. As pointed out by the defendant in his papers, the alleged incident did not involve violence or even the threat of violence. In addition, the defendant also submitted evidence concerning his personal character, *e.g.,* that he is a

gainfully employed family man who has never before been charged with or convicted of an offense.

After the defendant applied for admission to PTI, the prosecutor and program director refused to admit the defendant to PTI. Although the prosecutor chose, after reconsideration, to consent to the defendant's admission to PTI, the program director refused to alter his position. As noted earlier, the program director's refusal to recommend the defendant's enrollment in PTI was accompanied by marks next to various factors. However, no factual basis was given for these factors, save for repeated references to the alleged involvement of children in the charged offenses. At the two hearings of this matter, the PTI director repeatedly "parroted" the applicable factors without giving a factual basis therefor.[5] The only exception was his observation that children were involved in the alleged incident. Under such circumstances the "suspicions of arbitrariness", *Nwobu, supra,* 139 *N.J.* at 249, 652 *A.*2d 1209, generated by the PTI director's denial notice were confirmed by the PTI director's failure, at the two hearings of this matter, to furnish a factual basis for his findings. Moreover, because the prosecutor ultimately decided to consent to the defendant's admission to PTI, the program director's refusal to recommend the defendant's admission into the program would "clearly subvert" a "primary purpose of PTI": to augment, not diminish, the prosecutor's options. *Id.* at 246, 652 *A.*2d 1209; *Dalglish, supra,* 86 *N.J.* at 509, 432 *A.*2d 74; *Kraft, supra,* 265 *N.J.Super.* at 111, 625 *A.*2d 579. Given the foregoing, the defendant has demonstrated, by a preponderance of the evidence, that the program director's decision not to recommend the defendant for admission to PTI constituted a "clear error of judgment". *Bender, supra,* 80 *N.J.* at 93, 402 *A.*2d 217.

---

[5] Indeed, at the first hearing of this matter, the PTI director withdrew factor (3) (concerning violence or the threat of violence in the alleged offense) only after the court asked him to identify the factual basis for his choice of that factor.

Accordingly, the court finds that the defendant has met his burden of persuasion by demonstrating that the PTI director abused his discretion in refusing to recommend the defendant's admission to PTI. The defendant is hereby admitted to PTI.