698 A.2d 1299

STATE OF NEW JERSEY v. SAULO BURBANO, DEFENDANT.

Superior Court of New Jersey
Law Division (Criminal)
Union County

Decided September 27, 1996.

John G. Esmerado, Assistant Prosecutor, appearing for the State. (*Edward N. Neafsey*, Deputy Attorney General, Acting Prosecutor)

*Candido Rodriguez*, on behalf of the defendant.

BARISONEK, P.J.C.P.

The defendant, Saulo Burbano, was charged with *N.J.S.A.* 2C:39–5B, Unlawful Possession of a Weapon, a third degree offense, and *N.J.S.A.* 2C:29–2(a), Resisting Arrest, a fourth degree offense. Defendant applied for admission into Pretrial Intervention (PTI) and was rejected for admission.

Defendant was a patron at a local tavern and became involved in an altercation. Defendant alleged that as he left the tavern to retrieve some personalty from his automobile, he was accosted by several men who attempted to rob him. He further alleged that one individual produced a handgun and threatened him, that he disarmed this individual and fired the gun in the air to scare off the men. Defendant then alleged that when the police arrived, he walked from the area, removed the clip from the weapon, then replaced the clip and placed a round into the chamber. He then threw the weapon into a bush and kept walking until he was stopped by the police.

The police alleged that a call was received as to an altercation in the tavern, and that a gunshot had been fired in the tavern. When they arrived at the scene, the crowd pointed to defendant, who was walking away as the person involved in the altercation, and who discharged the weapon. The police yelled for defendant to stop, but he continued to quickly walk away. The police also alleged that they saw defendant carrying a silver handgun. When they pursued him with weapons drawn, they saw defendant throw the weapon into the bushes. When the police tried to detain defendant, a struggle ensued and defendant was arrested. The police subsequently retrieved the handgun from the bushes and found a live round in the chamber.

Initially, the PTI director and the prosecutor rejected defendant's petition for PTI under *Rule* 3:28, Guideline 3(i). They determined that the nature of the offense was of such a serious nature that it far outweighed any positive rehabilitation factors and that the action of defendant amounted to an act of violence and/or threat of violence.

The prosecutor, at defendant's request, agreed to reconsider his position of rejection due to proof problems, since the police had failed to secure the names of witnesses at the tavern during their investigation of the incident. The prosecutor felt that this failure would adversely affect the State's ability to prove its case. The prosecutor requested that the program director re-evaluate her position, which she agreed to do.

The program director, after reconsideration, declined to accept defendant for admission, citing the same reasons for rejection. The prosecutor, however, reversed his position and recommended defendant for admission. Defendant appeals to this Court based on the program director's recommendation to deny admission.

The issues at hand are who bears the ultimate responsibility of deciding whether a defendant shall be admitted into PTI when the program director and the prosecutor disagree on a defendant's admission, and whether the court must admit defendant if the prosecutor consents to admission. *R.* 3:28 clearly grants both the director and the prosecutor the power to deny an applicant admission into PTI.

The majority of case law to date under the separation of powers doctrine has dealt with judicial review of a prosecutor's refusal to consent to PTI admission, as opposed to a review of the prosecutor's consent to admission. The New Jersey Supreme Court has reasoned that judicial review is necessary but, due to separation of powers concerns, it should be limited in scope. *See State v. Leonardis,* 73 *N.J.* 360, 375 *A.*2d 607 (1977) (*Leonardis II*). There is no question under existing case law that a defendant must clearly and convincingly establish that a prosecutor's refusal to consent to admission was based upon a patent and gross abuse of discretion before a court may override the prosecutor's decision and suspend criminal proceedings. *Id.* at 382, 375 *A.*2d 607.

The Supreme Court also held that a defendant can demonstrate a patent and gross abuse of discretion when the prosecutor's refusal was not premised upon a consideration of all relevant factors, was based on a consideration of irrelevant or inappropri-

ate factors or amounted to a clear error in judgment. A defendant must further show that the prosecutor's error will clearly subvert the goals underlying PTI. *State v. Bender,* 80 *N.J.* 84, 402 *A.*2d 217 (1979). The *Bender* Court further restricted judicial review of the prosecutor's decision to the reasons given by the prosecutor for his or her refusal. *Id.* at 94, 402 *A.*2d 217.

In *State v. Dalglish,* 86 *N.J.* 503, 432 *A.*2d 74 (1981), the Supreme Court reviewed the standard set forth in *Leonardis II,* in light of the codification of the PTI program contained in *N.J.S.A.* 2C:43–12. The Court upheld the high standard governing review of a prosecutor's veto. The Court in *Dalglish* reasoned that the concern over separation of powers motivated the *Leonardis II* decision and that concern survives the Legislature's enactment of the statutory PTI program. The Supreme Court opined that:

> As we stated in *Leonardis II,* judicial review of a prosecutor's decision whether or not to suspend criminal charges infringes on both the Legislature's power to define crimes and the Executive's responsibility to enforce the laws and therefore must be performed with sensitivity.... Nevertheless, our concern about unwarranted interference with prosecutorial prerogative persists as a reason for requiring that a trial court find a patent abuse of discretion before ordering enrollment....
>
> [*Dalglish,* 86 *N.J.* at 513, 432 *A.*2d 74.]

The Appellate Division, in *State v. Kraft,* 265 *N.J.Super.* 106, 625 *A.*2d 579 (App.Div.1993) held that:

> it has clearly been acknowledged that [the PTI] decision lies, in the first instance, with the prosecutor, and once he has determined that he will not consent to the diversion of a particular defendant, his decision is to be afforded great deference.
>
> [*Id.* at 111, 625 *A.*2d 579 (citing *Leonardis II, supra,* 73 N.J. at 381, 375 A.2d 607).]

The great deference granted to the prosecutor's decision has been termed "enhanced deference." *See State v. Kraft,* 265 *N.J.Super.* 106, 111–112, 625 *A.*2d 579 (App.Div.1993); *State v. Nwobu,* 139 *N.J.* 236, 246, 652 *A.*2d 1209 (1995); *State v. Lopes,* 289 *N.J.Super.* 460, 673 *A.*2d 1379 (Law Div.1995). Enhanced deference has been traditionally applied only to the decision of the prosecutor and has been held to be inappropriate to a decision by

the PTI director. *Kraft, supra,* 265 *N.J.Super.* at 111, 625 *A.*2d 579.

Also in *State v. Nwobu,* 139 *N.J.* 236, 652 *A.*2d 1209 (1995), the Supreme Court stated that prosecutorial discretion in PTI decisions is critical for two reasons; (1) it is the fundamental responsibility of the prosecutor to decide whom to prosecute; and (2) it is the primary purpose of PTI to augment, not diminish, the prosecutor's options. *Id.* at 249, 652 *A.*2d 1209.

The Supreme Court has also recognized, however, the role of the Director in the PTI decision:

Under current practice, admission into PTI is based on a recommendation by the criminal division manager, with the consent of the prosecutor. *R.* 3:28 * * * The standards for review of PTI decisions are firmly established by our prior decisions. Those standards are generally couched in terms of the prosecutor's function, although the PTI Director has a parallel involvement in the process. For example, the PTI director receives confidential information in processing the applications. [*Id.* at 246, 652 *A.*2d 1209. (citations omitted).]

The Supreme Court in *Nwobu* recognized the Director as a judicially appointed agent of the courts selected by the assignment judge. The Law Division recently in *State v. Lopes, supra,* 289 *N.J.Super.* 460, 673 *A.*2d 1379 (Law Div.1995), remarked that the PTI decision is a "quasi-judicial decision made by a judicially appointed program director and a county prosecutor (who performs the executive charging function).... 'Although pretrial diversion is by its nature part of the prosecutor's charging function, the statutes, procedures and guidelines involve the judiciary in the administration of PTI.' " *Id.* at 471, 673 *A.*2d 1379, (quoting *State v. Nwobu, supra,* at 245, 652 *A.*2d 1209).

*Lopes* went on further to clarify the separation of powers implications raised by such a statutory scheme. The case stated that the, "overlap in power in the PTI area ... is not violative of that doctrine because it does not require an absolute division of power among the branches." *Lopes, supra,* 289 *N.J.Super.* at 471, 673 *A.*2d 1379 (citing *Leonardis II, supra,* 73 *N.J.* at 376, 375 *A.*2d 607). *Lopes* interpreted the separation of powers doctrine as designed to prevent a single branch from receiving absolute

power, and further stated that one of the doctrine's primary goals is to create cooperation among the three branches. The Court also reasoned that another aspect of the doctrine is the concept of deference to a co-equal branch and such aspect comes into play where there is a conflict between the prosecutor, who consents to admission and the Program Director who refuses to recommend admission. *Id.* at 471–473, 673 *A.*2d 1379.

*Lopes* found that the PTI decision rests with both the Director and the Prosecutor, although differing standards apply to the decision of each. Thus, both entities must concur regarding admission of defendant. Although *Lopes* is a Law Division case and its holding is not binding upon this court, its rationale which is fundamentally sound stems from the holding in *Nwobu,* as well as the Rule and the statutory scheme of Pretrial Intervention.

*R.* 3:28 requires a decision by both the prosecutor and the director. Subsection (b) states that:

... the designated judge may, on the recommendation of the criminal division manager (the Director) and with the consent of the prosecutor and the defendant, postpone all further proceedings against said defendant....

Subsections c(1) and (2) of the rule similarly requires the recommendation of the criminal division manager and the consent of the prosecutor for ultimate dismissal of the case or extension of the period of diversion, respectively. Subsection (f) prohibits pretrial appeal when the Director and the Prosecutor reject an application.

*N.J.S.A.* 2C:43–12(e) similarly requires the recommendation of the Director and the consent by the Prosecutor for diversion and sets forth certain factors to be considered by both parties in making their decisions. Subsection (f) of the statute also allows for appeal of a rejection by either the Director or the Prosecutor. When the Legislature enacted the statutory scheme therefore, it clearly intended that both entities approve an applicant's admission.

It is apparent, after analyzing precedent, that the courts have afforded prosecutors greater latitude in PTI matters than di-

rectors. This enhanced deference however has been applied only in the context of a prosecutorial rejection or more specifically, a prosecutorial veto.

The prosecutor in the instant matter asserts that due to theories of enhanced deference and prosecutorial vetoes, the court should rule in favor of his decision to admit defendant into PTI over the program director's rejection, since prosecutorial determinations are to be given greater deference than those made by program directors. That mandate however, is not to suggest that determinations made by directors are to be ignored. Rather, the burden of proof on a defendant to overcome determinations of rejections made by program directors should, as discussed in *Lopes*, have a lower standard of proof than the standard afforded to prosecutors. *See Lopes, supra,* 289 *N.J.Super.* at *479, 673* A.2d *1379.*

A defendant in order to challenge the refusal of the director, must demonstrate by a preponderance of the evidence, that the program director's decision amounted to an abuse of discretion; whereas, a defendant's challenge to a refusal by the prosecutor must be demonstrated by clear and convincing evidence. Defendant, in either situation, meets the burden if it demonstrated that the decision:

   (a) was not premised upon a consideration of all relevant factors,

   (b) was based upon a consideration of irrelevant or inappropriate factors, or

   (c) amounted to a clear error in judgment.

*State v. Bender,* 80 *N.J.* 84, 402 *A.*2d 217 (1979); *State v. Lopes,* 289 *N.J.Super.* 460, 478, 673 *A.*2d 1379 (Law Div.1995); *State v. Nwobu,* 139 *N.J.* 236, 247, 652 *A.*2d 1209 (1995); *State v. Leonardis,* 73 *N.J.* 360, 362, 375 *A.*2d 607 (1977).

*Lopes* faced a similar although not exact situation as in this case, the director refused admission and the prosecutor approved admission. The case was decided on the premise that the program director acted arbitrarily and that the defendant proved, at the lower standard of a preponderance of the evidence, that the program director's decision was a clear error in judgment. *Lopes,*

*supra,* 289 *N.J.Super.* at 481, 673 *A.2d* 1379. The prosecutor consented to admission and the court allowed entry into PTI over the director's objection, since the court did not question the prosecutor's decision to consent for admission. That is not, however, the situation in this case. Here, defendant has failed to prove by a preponderance of the evidence that the program director has acted arbitrarily and committed a clear error in judgment in rejecting defendant for admission, and this court questions the prosecutor's consent for admission. The "thorny thicket" discussed in *Lopes, supra,* 289 *N.J.Super.* at 476–477, 673 *A.2d* 1379, (citing *State v. Imbriani,* 280 *N.J.Super.* 304, 654 *A.2d* 1381 (Law Div.1994)), where the State changes its position from rejection to admission and the program director continues to object to admission, has come to fruition and to date there is no case law which deals with this issue.

Pursuant to *R.* 3:28, Guideline 3(i), the PTI director determined that defendant was not an appropriate candidate for the program due to his potential for violence and the serious nature of the offense. She submitted a detailed statement in support of this decision, and a background history on defendant. The director established to this court's satisfaction, that defendant's actions did not show he was a victim, but rather that defendant's actions amounted to an act of violence and/or a threat of violence to patrons at the tavern, pedestrians on the street and the police, by his discharging a firearm, fleeing from the police, reloading the firearm, discarding it onto the street and fighting with the police. There is insufficient evidence to establish by a preponderance of evidence that the program director acted arbitrarily. The decision of the director therefore was not an abuse of discretion.

■ The prosecutor, on the other hand, neglected to state any valid reason for his determination to admit the defendant into the PTI program, except for the inadequate police investigation. While this may be a factor to consider, it should not be the sole factor to rely upon in determining whether to admit a defendant

into PTI. This court, therefore finds that the prosecutorial decision, using a clear and convincing standard:

(a) was not premised upon a consideration of all relevant factors,

(b) was based upon a consideration of irrelevant or inappropriate factors, or

(c) amounted to clear error in judgment.

The application of the *Bender,* standard of judicial review in the instant case, suggests that the prosecutor's decision to admit the defendant must be considered an arbitrary abuse of discretion. The prosecutor furthermore has failed, pursuant to *Rule* 3:28, Guideline 8, to provide a written statement of reason for the decision he made.

When, as previously stated, the prosecutor and the program director disagree, courts have continually afforded the prosecutor greater consideration in PTI matters than the director. See *State v. Nwobu,* 139 *N.J.* at 246, 652 *A.2d* 1209; *State v. Kraft,* 265 *N.J.Super.* at 111–112, 625 *A.2d* 579; *State v. Lopes,* 289 *N.J.Super.* 460, 673 *A.2d* 1379 (Law Div.1995). However, as the Supreme Court in *State v. Hermann,* 80 *N.J.* 122, 127, 402 *A.2d* 236 (1979) noted: "... this discretion is neither unbridled nor absolute...." Although narrow in scope, judicial review of prosecutorial decisions is available. *See State v. DeMarco,* 107 *N.J.* 562, 566–76, 527 *A.2d* 417 (1987). Further, as stated in *Hermann,* as to judicial review, "we are of the opinion that the standards of judicial review enunciated in *Leonardis II* are applicable whether the prosecutor's decision is in favor of or against PTI enrollment." *See Hermann, supra,* 80 *N.J.* at 128, 402 *A.2d* 236.

The court therefore should not just accept the position of the prosecutor, especially if it is in conflict with the program director's position. It is held rather that when there is a conflict between the director who is opposed to enrollment, and the prosecutor, who is in favor of enrollment, the court must first determine whether defendant has established by a preponderance of the evidence that the program director acted arbitrarily and committed an error in judgment in refusing admission. If not, the court, pursuant to *Hermann,* should then decide by clear and

convincing evidence standard whether the prosecutor's decision to admit was an arbitrary abuse of discretion and a clear error in judgment.

Here, since the prosecutor has failed to show specific reasons for admitting the defendant over the director's refusal, there was an arbitrary abuse of the prosecutor's discretion. Since the program director established that defendant was not an appropriate candidate, he is denied admission.