STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JEROME BENDER, R. P., DEFENDANT-APPELLANT.

Argued January 23, 1979—Decided May 24, 1979.

86

*Ms. Marilyn Rhyne Herr* argued the cause for appellant (*Messrs. Trombadore* and *Trombadore,* attorneys).

*Mr. Allan J. Nodes,* Deputy Attorney General, argued the cause for respondent (*Mr. John J. Degnan,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

PASHMAN, J. In this and the companion cases of *State v. Sutton,* 80 *N. J.* 110 (1979), and *State v. Maddocks,* 80 *N. J.* 98 (1979), we are called upon to review prosecutorial decisions denying defendants admission into particular county pretrial intervention programs, *see R.* 3 :28. Proper disposition of each of these cases requires both an application of the standard of review enunciated in *State v. Leonardis,* 73 *N. J.* 360 (1977) (*Leonardis II*), and the interpretation of various provisions of the Guidelines adopted by this Court relating to the operation of PTI programs, *see* Pressler, *Current New Jersey Court Rules,* Guidelines 1–8 at 497–503 (1978) [hereinafter Guidelines]. Inasmuch as the factual patterns and legal principles involved in each of these cases

differ in several material respects, we have chosen to treat each matter in a separate opinion. Certain principles, however, are equally applicable in all three cases and will be dealt with at the outset of the present ruling.

## I

### Introduction

Pretrial Intervention (PTI) is a program whose chief aim is that of diverting individuals with high rehabilitative prospects from the traditional channels of the criminal process. Sponsored in conjunction with counseling and training services, the project provides alternatives to prosecution and conviction where the latter course would be "counterproductive, ineffective or unwarranted." *State v. Leonardis*, 71 *N. J.* 85, 89 (1976) (*Leonardis I*). By relieving a certain class of criminal suspects of the time-consuming and often debilitating rigors of the criminal process as well as the stigma which attaches upon conviction of crime, PTI provides an avenue through which rehabilitation may more easily be accomplished. *See Leonardis I, supra,* 71 *N. J.* at 89–90, 92–102; *State v. Senno,* 79 *N. J.* 216, 227–228 (1979); *Guideline* 1 (a)–(c). Another goal of the program is that of expediting the disposition of criminal matters in order that the caseload burdens of our trial courts be alleviated. *See Leonardis I, supra,* 71 *N. J.* at 89–90, 92–102; *State v. Senno, supra,* 79 *N. J.* at 228; *Guideline* 1(d).

The history of PTI in New Jersey, the policy considerations which led to our adoption of the program through *R.* 3:28, and the project's procedural workings have been fully outlined in *Leonardis I,* and need not here be repeated. *See* 71 *N. J.* at 92–107. Nor do we perceive any necessity to reiterate the reasoning which led to our holding in *Leonardis II* that prosecutorial decisions rejecting defendants' applications for PTI are subject to judicial review. *See* 73 *N. J.* at 375–380. Because of their special relevance to the cases

presently before us, however, certain of the principles enunciated in the *Leonardis* decisions must be set forth.

*Leonardis I* makes clear that defendants who have been accused of *any* crime are eligible for enrollment in PTI, and that admission is to be measured according to (a) the individual's amenability to correction, (b) his responsiveness to rehabilitation, and (c) the nature of the offense with which he is charged. *See* 71 *N. J.* at 121–122; *Guidelines,* Introduction and Guidelines 2, 3. Further, decisions made by judges, prosecutors, and program coordinators in granting or denying applications for PTI enrollment, as well as the underlying reasons therefor, must be reduced to writing and disclosed to the defendant. *See* 71 *N. J.* at 122; *Guideline* 8.

In *Leonardis II,* we noted that although every person accused of crime is eligible for PTI in the sense that his application must be given consideration, a prosecutor's refusal to divert can, where appropriate, be based solely on the nature of the offense charged. *See* 73 *N. J.* at 382; *Guideline* 3(i). Further, *State v. Senno, supra,* establishes that nonindictable offenses are not encompassed within the meaning of the term "crime" as used in *R.* 3:28 or the Guidelines, and hence a county is free to exclude from its program individuals accused of disorderly persons and motor vehicle infractions.

In *Leonardis II,* we held that judicial review of prosecutorial decisions denying admission into PTI does not contravene various state constitutional provisions. However, cognizant of the separation of powers concerns raised by such a procedure, we severely limited the scope of any review that would be undertaken. We emphasized that "great deference should be given to the prosecutor's determination not to consent to diversion" and that a defendant must sustain a "heavy burden . . . in order to overcome [such] a prosecutorial veto . . ." 73 *N. J.* at 381. Accordingly, we held that in order for a court to nullify the prosecutor's decision, the

defendant must "clearly and convincingly establish that the prosecutor's refusal to sanction admission into the program was based on a patent and gross abuse of his discretion." *Id.* at 382; *See Guidelines* 2, 3(i), 8.

## II

### *Facts of This Case*

From 1960 to 1976, defendant was employed as a licensed pharmacist at the Wald Drug Store in Somerville, New Jersey. Married in 1960, he is presently the father of two children, aged 10 and 13. Aside from the incidents to be described below, he has never had any confrontations with the law.

At some point in 1972, while experiencing marital difficulties, defendant began to use cocaine. He soon became habituated to the drug and maintained his supply by diverting quantities from the stocks of the pharmacy at which he worked. Simultaneously, defendant began to consume large amounts of liquor daily and quickly became alcohol dependent. By the close of 1975, the debilitating physical and psychological effects of his drug and alcohol abuse became noticeable to his employer, who confronted defendant.

Defendant readily admitted his use of cocaine and alcohol, voluntarily provided written statements of his past criminal activities to State Pharmacy Board investigators, and immediately embarked upon a program of rehabilitation by entering the Carrier Clinic in Belle Mead. Upon his discharge from Carrier in January 1976, he enrolled in the Clinic's out-patient program. During the past three years, he has successfully completed programs sponsored by the Addiction Recovery Unit of Carrier, Alcoholics Anonymous, and the Somerset County Voluntary Drug Rehabilitation Program. In addition, defendant has volunteered his services in order to aid other addicts at Carrier and is presently serving on the Advisory Board of the Clinic's Addiction Recovery Unit.

Since his discharge from Carrier, defendant has resolved his marital difficulties through divorce. He has voluntarily refrained from the practice of pharmacy, even though his employer offered to restore him to his former position. Instead, defendant has obtained employment in a new field and has advanced in a relatively short period of time from minimum wage laborer to supervisor.

Defendant has made complete restitution to his former employers, both for the cocaine which he had diverted and the damage to the pharmacy's business deriving from adverse publicity. Defendant has also reimbursed the County Welfare Department for funds given and services rendered to his family during the period of his incapacity. Finally, it should be noted that on September 28, 1977, the State Board of Pharmacy revoked defendant's license to practice his former profession; consequently, he cannot now return to that position even should he so desire.

As a result of his activities involving the diversion and use of cocaine, in April 1976 defendant was indicted for seven drug-related offenses, including theft of cocaine over a four-year period (*N. J. S. A.* 2A:119–8.1); unlawful possession of various controlled dangerous substances (*N. J. S. A.* 24:21–20(a)(1), (3)); possession of controlled dangerous substances not in their original containers (*N. J. S. A.* 24:21–18); and failure to maintain certain records required by the Controlled Dangerous Substances Act (*N. J. S. A.* 24:21–21(a)(4); 24:21–13; 24:21–9). On November 15, 1976, defendant entered a plea of guilty to the count charging theft of cocaine. This plea was offered pursuant to an understanding reached with the prosecutor by which the State agreed to dismiss the remaining charges and recommend a noncustodial sentence.

Subsequently, in December of 1976, a Pretrial Intervention Program was established in Somerset County. Upon request of defendant's counsel, the trial judge withheld sentencing on the theft count pending completion of defendant's application for enrollment in the program.

After an exhaustive review of defendant's background, the circumstances surrounding his crime, his recovery through treatment, and his conduct subsequent to 1975, the program coordinator wholeheartedly recommended to the Deputy Attorney General that defendant be admitted to the PTI program. Notwithstanding, on March 28, 1977 the Deputy Attorney General advised the Probation Department that the State would not consent to defendant's enrollment. Two reasons were supplied:

A. [Defendant's] course of conduct . . . was a continuing criminal business or enterprise. * * * The defendant systematically used Schedule II order forms to obtain narcotics over a four year period. B. The conduct pursued by the Defendant-Bender, a licensed pharmacist, is a breach of public trust where admission to a PTI program would depreciate [sic] the seriousness of the defendant's crime. * * * Admission to PTI may result in the return of his pharmacy license.

Upon being informed of the Attorney General's decision, defendant submitted additional materials to the Probation Department in order to demonstrate his eligibility for PTI. Included were letters of recommendation from his personal physician, the director and assistant director of the Carrier Clinic's Addiction Recovery Unit, his former employer at the Wald Drug Store, and his present employer. Nevertheless, on May 31, 1977, the State informed defendant that it would "maintain its original position in this case." Defendant therefore moved before Judge Meredith that he be enrolled in the PTI program over the objections of the Deputy Attorney General.

Following a thorough and careful review of the submitted materials, the circumstances surrounding the perpetration of the crime, and defendant's "miraculous recovery," Judge Meredith concluded that the State's refusal to consent amounted to a patent and gross abuse of discretion. Indeed, so strong was the judge's conviction in this regard that he was compelled to remark that he had "never seen a more blatant, callous indifference as [had been] exhibited toward

this defendant [by the State] by the . . . veto of [his application for] Pretrial Intervention * * *." Accordingly, he entered an order admitting defendant to the Somerset County PTI program.

On appeal, the Appellate Division, one judge dissenting, reversed the decision of the trial court. *State v. Bender,* 159 *N. J. Super.* 465 (App. Div. 1978). Although noting that defendant's plight evoked "great sympathy," *id.* at 467, the appellate majority felt "constrained" to hold that defendant's crime constituted a breach of the public trust which had been placed in him as a licensed pharmacist — a type of crime which *Guideline* 3(i)(4) characterizes as one which should "generally" result in rejection from PTI. Consequently, the court was "forced" to conclude that the Deputy Attorney General's decision was not so arbitrary as to constitute a "patent and gross abuse of discretion." We granted defendant's motion for leave to appeal.

### III

The main point of controversy between the parties concerns whether defendant has demonstrated that the prosecutor's decision constituted a "patent and gross abuse of his discretion." *Leonardis II, supra,* 73 *N. J.* at 382. The phrase "abuse of discretion" is frequently used in judicial discourse, but nevertheless defies precise definition. Ordinarily, an abuse of discretion will be manifest if defendant can show that a prosecutorial veto (a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment. *See Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 *U. S.* 402, 416, 91 *S. Ct.* 814, 28 *L. Ed.* 2d 136, 153 (1971). In order for such an abuse of discretion to rise to the level of "patent and gross," it must further be shown that the prosecutorial error complained of will clearly subvert the goals underlying Pretrial Intervention.

■ Given the primacy which our opinions attach to prosecutorial determinations, a court should ordinarily not order a defendant enrolled in PTI merely because it has concluded that the prosecutorial decision was based upon a consideration of inappropriate factors or not premised upon a consideration of all relevant factors. In such a case, the proper disposition will usually be to remand the matter so that the prosecutor may reassess defendant's eligibility in light of the court's rulings. If the alleged prosecutorial error is that of "clear error in judgment," obviously a remand will serve no useful function.

■ The statement of reasons which must accompany the prosecutor's decision, *see Leonardis I, supra,* 71 *N. J.* at 122, as well as the materials submitted by defendant, will ordinarily constitute the sole avenue through which a trial judge can apply this standard of review. Absent extremely unusual circumstances — circumstances which we cannot now foresee — a defendant cannot compel the prosecutor to take the stand and orally explicate either the manner in which he arrived at his decision or its underlying basis. *See United States v. Morgan,* 313 *U. S.* 409, 422, 61 *S. Ct.* 999, 85 *L. Ed.* 1429, 1435 (1941); *cf. State v. Masucci,* 156 *N. J. Super.* 272 (Law Div. 1978). Moreover, unless and until a defendant demonstrates the contrary, our judges must presume that all relevant factors were considered and weighed prior to a prosecutorial veto.

In the present case, the statement of reasons submitted by the Deputy Attorney General demonstrates that defendant's rejection was premised wholly upon his perception of the nature of the offense charged in relation to the Guidelines. In the prosecutor's opinion, defendant's theft of cocaine was both

■ part of a continuing criminal business or enterprise; [and] . . . a breach of the public trust where admission to a PTI program would deprecate the seriousness of defendant's crime * * *.

[*Guideline* 3(i)(2), (4)]

If a crime fits within either of these two categories, *Guideline* 3(i) provides that an application should "generally" be rejected.

The State maintains that defendant engaged in a continuing criminal enterprise because he systematically used Schedule II order forms to obtain narcotics over a four-year period. Thus, the State argues, he participated in a series of deliberate and planned unlawful acts rather than in "a solitary incident of unreflected spontaneity." *See State v. Barrett,* 157 *N. J. Super.* 96, 102 (App. Div. 1978); *State v. Markt,* 156 *N. J. Super.* 486, 490 (App. Div. 1978); *State v. Masucci, supra,* 156 *N. J. Super.* at 280. Defendant, on the other hand, contends that his thefts cannot be characterized as such a continuing criminal enterprise because the cocaine was diverted for personal consumption, rather than for "profit." *See State v. Bender, supra,* 159 *N. J. Super.* at 472 (Furman, J. S. C., dissenting).

We agree with the State that in order for a series of criminal acts to constitute a continuing enterprise, it is not necessary that a "profit" be realized in the sense that the fruits of those crimes be sold to third persons and hence be converted into cash. Nonetheless, the defendant's course of conduct must ordinarily involve commercial overtones. That is, the crimes perpetrated must be undertaken for the purpose of enriching defendant in some material way.

As such, the crimes here engaged in by defendant cannot be characterized as a continuing criminal business or enterprise in the sense of being undertaken for commercial purposes. Although defendant systematically diverted cocaine from his employer's stocks over a four-year period, his course of conduct was not motivated by a desire to, nor did it, add to his worldly possessions or in any other manner result in financial gain. Rather, his crimes were merely undertaken in order to satisfy his need for drugs.

Support for this construction of "continuing criminal business or enterprise" can be gleaned from the language

of the Guidelines themselves. One of the main purposes of PTI is "[t]o provide a mechanism for permitting the least burdensome form of prosecution possible for defendants charged with 'victimless' offenses." *Guideline* 1(c). Clearly, this purpose would be entirely frustrated were persons who unlawfully consume controlled dangerous substances over a prolonged time span to be deemed engaged in a continuing criminal enterprise and hence "generally" to be rejected pursuant to *Guideline* 3(i)(2). Although in the present case defendant's crime was not truly "victimless" — inasmuch as his cocaine diversions harmed his employer as well as himself — the underlying rationale of *Guideline* 1(c) is nevertheless applicable. Defendant's later thefts, being precipitated in large part by his drug dependence, cannot be characterized as part of a continuing business or enterprise.

■ We also cannot accept the State's contention that defendant's crime constituted "a breach of the public trust." *Guideline* 3(i)(4). It is true that in issuing a license, the State entrusts a pharmacist with the dispensing of controlled dangerous substances in order that the health and welfare of the public not be undermined through indiscriminate and unsupervised consumption of drugs. *See N. J. S. A.* 24:21–1 *et seq.* Whether this "entrusting" is sufficient to make a pharmacist not employed by the State a "public trustee" under *Guideline* 3(i)(4) is a difficult question which we need not here address. For even assuming that a pharmacist can be so characterized, the crimes here charged would not constitute a breach of that trust.

Defendant's cocaine diversions were not intended to nor did they cause injury to the public in general or to any particular segment thereof. The cocaine was personally consumed, not distributed to third parties. Only defendant, himself, and his immediate employer were victimized. Thus, although defendant's crimes were made possible by his status as a licensed pharmacist, those crimes did not breach the trust reposed in him to protect the citizenry at large.

The prosecutor's disposition of defendant's application was thus premised upon an inaccurate construction of the Guidelines. He erroneously characterized defendant's crime as one encompassed by *Guideline* 3(i) and hence "generally" meriting rejection from PTI. Having made this erroneous determination, a strong possibility exists that he did not place as much weight upon defendant's "amenability to correction" and "responsiveness to rehabilitation" as he would have had he properly construed *Guideline* 3(i). Had he the benefit of today's opinion by this Court when making his original determination, his assessment of defendant's PTI eligibility, given the facts and circumstances of this case, might have been different.

As noted earlier, defendant has made a complete and miraculous recovery from the alcohol and drug illnesses from which he earlier suffered. He has voluntarily compensated his employer for the damage he caused. He has obtained new and productive employment. He voluntarily counsels others who have become addicted to drugs. His marital difficulties — the initial cause of his cocaine consumption — have been resolved. Finally, unknown to the prosecutor at the time of defendant's initial rejection, defendant's license to practice pharmacy has been revoked and hence no justifiable fear exists that he will again assume and abuse the trust placed in him. On the other hand, the fact remains that over a four-year period the defendant illegally appropriated drugs belonging to his employer contrary to the rules and regulations governing a licensed pharmacist.

■■ Under all the circumstances and in view of our interpretation of *Guideline* 3(i), we cannot say with any degree of certainty what actions the prosecutor would have taken. As emphasized in *Leonardis II,* the decision to divert is primarily entrusted to the prosecutor's discretion subject only to limited judicial review. Hence, we feel the wiser course is to remand this matter to the trial court so that the prosecutor can take a fresh look at defendant's background in the light of our rulings today.

Accordingly, the judgment of the Appellate Division is reversed and this case is remanded for proceedings consistent with our opinion.

*For reversal and remandment*—Chief Justice HUGHES and Justices MOUNTAIN, JACOBS, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—7.

*For affirmance*—None.