# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0223-18T4

STATE OF NEW JERSEY
IN THE INTEREST OF G.M.C.

Argued March 27, 2019 – Decided June 14, 2019

Before Judges Alvarez and Mawla.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FJ-13-0312-18.

Monica do Outeiro, Assistant Prosecutor, argued the cause for appellant State of New Jersey (Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney; Monica do Outeiro, of counsel and on the brief).

Mitchell J. Ansell argued the cause for respondent G.M.C. (Ansell Grimm & Aaron, attorneys; Mitchell J. Ansell, of counsel and on the brief).

PER CURIAM

G.M.C. was sixteen years old when juvenile complaints were lodged against him, charging him with, had they been brought against an adult, the following offenses:     first-degree aggravated sexual assault, N.J.S.A.

2C:14-2(a)(7); second-degree sexual assault, N.J.S.A. 2C:14-2(c)(1); third-degree invasion of privacy (filming), N.J.S.A. 2C:14-9(b)(1); third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1); and third-degree invasion of privacy (disclosure of images), N.J.S.A. 2C:14-9(c)(1). The Monmouth County Prosecutor's Office sought waiver of the juvenile to adult court. See N.J.S.A. 2A:4A-26.1. After reviewing additional information provided by G.M.C., the Prosecutor's Office reiterated its intent and reasons for the filing of a waiver motion. On July 30, 2018, after a several-day waiver hearing, a family court judge over the course of approximately two hours and sixty-five transcript pages denied waiver. The State's interlocutory appeal and request for a stay was granted. We now reverse and remand.

The charges arose from an encounter at a social event between G.M.C. and the victim, whom for the sake of anonymity, we will refer to as Mary. She too was sixteen. Along with approximately thirty adolescents, they attended a pajama-themed party where alcohol was consumed. Parts of the basement where the party took place were blocked off. After engaging in "heavy petting," as described by the judge, G.M.C. and Mary walked into a closed off darkened area. G.M.C., who had no prior delinquency history, was drunk. Mary was also visibly drunk, her speech was slurred, and she stumbled as she walked. While

on the sofa, a group of boys sprayed Febreze on Mary's bottom and slapped it with such force that the following day she had hand marks on her buttocks.

Mary and G.M.C. had intercourse in the darkened room. G.M.C. filmed himself penetrating Mary from behind on his cell phone, displaying her bare torso, and her head hanging down. He forwarded the clip to several friends; only one said it showed Mary's head hitting repeatedly against the wall. In the days following the incident, G.M.C. sent the following text to his friends: "[w]hen your first time having sex was rape."

G.M.C. left the room when he was finished. Concerned about Mary's well-being, some of his friends checked on her and immediately told Mary's friends that she was ill. Mary was on the floor vomiting. She continued to be sick until driven home by a friend's mother.

The following morning, Mary discussed with her mother her fear that sexual things had happened at the party. She did not understand how she could have gotten bruise marks on her body or how her clothing had torn. Over the course of several months, Mary learned that G.M.C.'s video had been circulated among his friends and their mutual acquaintances, and she attempted to communicate with him about it. She repeatedly told G.M.C. that she was more interested in putting the episode behind her than anything else.

A-0223-18T4

G.M.C. denied having recorded the encounter and said that their friends were lying. When Mary learned that G.M.C. had continued to disseminate the clip, her mother contacted the authorities. At that point the family's focus was the destruction of the film. Unfortunately, after securing clearance from his sergeant, the first investigating officer urged G.M.C. and his friends to all delete the video, which apparently they did.

Mary and her family pursued criminal charges. In a memorandum dated September 22, 2017, an assistant prosecutor at the Monmouth County Prosecutor's Office recommended that this case be submitted for consideration for involuntary waiver to the Law Division. The assistant prosecutor reviewed the eleven statutory factors under N.J.S.A. 2A:4A-26.1(c)(3) and concluded that waiver was appropriate. Regarding the nature and circumstances of the offense, the prosecutor noted:

> The juvenile at issue in this case, [G.M.C.] engaged in vaginal intercourse with [Mary] while she was visibly intoxicated, physically helpless and unable to provide consent. During the course of this sexual assault, [G.M.C.] recorded a cell phone video of himself with [Mary] and, subsequently, forwarded that video to seven . . . other juveniles. The State has sufficient probable cause to charge [G.M.C.] with aggravated sexual assault and sexual assault pursuant to the new waiver statute, as well as invasion of privacy and endangering the welfare of a child. A conviction for aggravated sexual assault, sexual assault or

A-0223-18T4

endangering the welfare of a child would also result in compulsory registration as a sex-offender pursuant to N.J.S.A. 2C:7-2b(2). The circumstances of [G.M.C.'s] violation of [Mary's] person and privacy, as well as the seriousness of the charged offenses, warrants the elevation of this case via involuntary waiver to the adult criminal court.

The prosecutor found that the "offenses involved a sexual assault against [Mary's] person and a gross violation of her privacy," and concluded that the juvenile's actions were sophisticated and predatory. The prosecutor wrote:

> [G.M.C.'s] conduct as it relates to the charged offenses was both sophisticated and predatory. He was aware of the off-limits areas in advance of the party. At the time he led [Mary] into the basement gym, she was visibly intoxicated and unable to walk without stumbling. For the duration of the assault, the lights in the gym remained off and the door was barred by a foosball table. Filming a cell phone video while committing the assault was a deliberate act of debasement. And, in the months that followed, he lied to [Mary] while simultaneously disseminating the video and unabashedly sharing the nature of his conduct therein. This was neither a childish misinterpretation of the situation, nor was it a misunderstanding. [G.M.C.'s] behavior was calculated and cruel. This level of criminal sophistication warrants the elevation of this case via involuntary waiver to the adult criminal court.

A December 7, 2017 addendum included the prosecutor's review of additional material supplied by the juvenile.

In denying waiver, the judge said:

5

I still in my mind . . . distinguish between a sexual assault and a rape. . . . [I]n my mind there is a distinction.

. . . [T]here have been some, not many, but some cases of sexual assault involving juveniles which in my mind absolutely were the traditional case of rape, all right, where there were generally two or more generally males involved, either at gunpoint or weapon, clearly manhandling a person into . . . an area where . . . there was nobody around, sometime in an abandon[ed] house, sometimes in an abandon[ed] shed, shack, and just simply taking advantage of the person as well as beating the person, threatening the person.

. . . [T]he factual scenarios themselves were so egregious, and it was those types of cases that the State felt the need to waive, and generally they were successful in their waiver[.]

. . . .

[The prosecutor's] . . . statement of facts . . . used the term[s] "sophistication" and "predatory." . . .

By looking at that information and considering what I knew just in terms of the research going on, I had . . . an issue. I was concerned. I wanted -- I was curious as to how the State was going to support the use of those terms.

. . . .

To get into the facts of the case, which I believe is crucial, because this is where the . . . dispute -- the abuse of discretion and the clear error of judgment enters in.

. . . .

6

And it seems clear that this young lady, the alleged victim here, and I call her the alleged victim here . . . .

. . . Some people would argue that, you know, really what did . . . she drink and how could she possibly have gotten as drunk as she says she was. That's really not important.

. . . I think it's an issue here, whether or not this young lady was intoxicated to the point that she didn't understand what was going on.

. . . Her position really has been that she doesn't remember much of what happened.

. . . .

. . . I really saw nothing that stood out to me that would substantiate that she was led into the back. The terms that were used were they walked hand in hand.

Now, I'm not saying that this young lady was not under the influence. I don't know whether she was extremely intoxicated or not, but no question she was under the influence.

. . . .

. . . I am bound in making my decision as to arbitrariness or abuse of discretion by the totality of the circumstances.

. . . .

It is extremely difficult for the [c]ourt to understand the meaning of the term "sophistication" and "predatory" and to find that what happened on this

day, even giving the State the benefit of the doubt as to their version of what happened, that this was sophisticated or predatory.

. . . .

But factually, it apparently didn't lead the young lady to do anything else about this, at least as far as the [c]ourt is aware, until the famous conversation, or infamous conversation, with [H.V.].

And there's no way that you can just downplay the effect the wording of that conversation . . . .

. . . .

. . . [T]he State isolated that statement and held onto that statement in determining what they . . . chose to believe happened here.

. . . .

. . . We have no testimony of the young lady, but we will at some point, I presume, have testimony of the young lady explaining why she decided or went to her mother who decided a couple of days later that we need to go to the police and discuss criminal charges. There wasn't a mention at that point of what type of criminal charges, to just discuss criminal charges.

. . . [I]t's not impossible for the [c]ourt to think that once the video is deleted it's a lot easier to bring the criminal charges. But I'm only . . . speculating, okay. All I know is they waited until . . . they were reasonably convinced that the video was deleted that they decided to go to explore their options.

After describing the sexually explicit text messages between G.M.C. and his friends regarding the incident, the judge said:

> It really doesn't make a lot of difference because the whole paragraph to me is just a 16-year-old kid saying stupid crap to his friends.
>
> He goes back and forth. I think it concerned the [c]ourt somewhat, "Boy, if I had a knife on me -- on me when I -- when I fucked her, I'd be the epitome of this show." I mean, . . . so childish, so stupid. But anything out of the ordinary for a 16-year-old . . . to be saying to boys, to his friends. And then, of course, he goes back to saying, "I fucked her, not raped her. Calm down. If you have the video, get rid of it."
>
> . . . .
>
> . . . [D]o I believe that it shows in any way a calculation or cruelty on his part or sophistication or a predatory nature? No, I do not.
>
> . . . .
>
> . . . [T]his young man comes from a good family who put him into an excellent school where he was doing extremely well.
>
> . . . He is clearly a candidate for not just college but probably for a good college. His scores for college entry were very high.

The judge also detailed G.M.C.'s extracurricular activities, including being an Eagle scout.

The judge expressed concern that the prosecutor did not indicate in the memorandum that she had explained to Mary and her mother the devastating effect a waiver would have on G.M.C.'s life. He interpreted State in re V.A., 212 N.J. 1 (2012), to mean the prosecutor had to "focus clearly on both sides here." The judge said it was important "to look at the children who you are dealing with and determine where does the proof lie, where does the culpability lie." By focusing only on the juvenile's culpability, the State had violated V.A. He further opined that the State had to consider "some of those factors that are set forth in V.A. which are not specifically set forth in the statute." Therefore, the judge concluded that the waiver motion should be denied because the prosecutor abused her discretion and incorrectly assessed the statutory factors.

On appeal, the State raises only one issue. It contends that the judge erred in denying the waiver motion because, in the process, he substituted his judgment for that of the prosecutor.

I.

In a juvenile delinquency case before the Family Court, the State may seek waiver of the juvenile to adult court without consent, by filing a motion for referral and a written statement of reasons. N.J.S.A. 2A:4A-26.1(a). Charges cannot be transferred to the Law Division unless the State can establish: 1) the

A-0223-18T4

juvenile was at least fifteen years of age at the time of the incident and 2) probable cause exists that a certain enumerated crime was committed, including aggravated sexual assault and sexual assault. N.J.S.A. 2A:4A-26.1(c); see State in re N.H., 226 N.J. 242, 251 (2016). The court may still deny a referral motion, however, "if it is clearly convinced that the prosecutor abused his [or her] discretion" in considering the eleven factors listed in the statute. N.J.S.A. 2A:4A-26.1(c)(3); R. 5:22-2.

The prosecutor will ordinarily be found to have abused his or her discretion if the decision: 1) fails to consider all relevant factors; 2) considered irrelevant or inappropriate factors; or 3) "amounted to a clear error in judgment." V.A., 212 N.J. at 22 (quoting State v. Bender, 80 N.J. 84, 93 (1979)). Deference should be accorded to the Family Division's expertise, common sense, and experience in adjudicating such matters. State in re J.F., 446 N.J. Super. 39, 52 (App. Div. 2016) (quoting State v. R.G.D., 108 N.J. 1, 16 n.7 (1987)).

Abuse of discretion review, however, does not mean a court "substitute[s] its judgment for that of the prosecutor." V.A., 212 N.J. at 8. Rather, it is limited to ensure the prosecutor made an individualized decision about the juvenile that was not arbitrary or otherwise beyond the scope of the statute. Ibid. Likewise, cursory or conclusory statements "lacking in detail" will not suffice. Id. at 8-9.

11

The prosecutor's statement of reasons for waiver must refrain from "mere regurgitation of the Guidelines' language" and reliance on incomplete information, or information outside the bounds necessary for seeking waiver. Id. at 28.

The current waiver statute, N.J.S.A. 2A:4A-26.1 was amended March 1, 2016. See N.H., 226 N.J. at 248-49. As the Court said in N.H., it "appears to have adopted parts of the Guidelines and case law." Id. at 250. The waiver motion requires a written statement setting forth the facts the prosecutor employed to assess the elements outlined in the statute, and "should apply the factors to the individual juvenile and not simply mirror the statutory language in a cursory fashion." Ibid.

## II.

In this case, the prosecutor's memorandum considered, factor-by-factor, each statutory element. It was undisputed that G.M.C. was fifteen years of age or older at the time of the alleged delinquent act. N.J.S.A. 2A:4A-26.1(c)(1). Nor was it disputed that there was adequate probable cause. See N.J.S.A. 2A:4A-26.1(c)(2). The delinquent act in question, if committed by an adult in this case, would have been aggravated sexual assault and sexual assault, two of the enumerated offenses that allow for waiver.

A-0223-18T4

In denying waiver, the trial court minutely considered the circumstances of the offense, made an independent assessment of the juvenile's culpability, and considered G.M.C.'s prior good character and "the input of the victim or the victim's family." N.J.S.A. 2A:4A-26.1(c)(3). His consideration of these elements, however, sounded as if he had conducted a bench trial on the charges rather than neutrally reviewed the State's application.

The likelihood of conviction was not for the judge to decide on a waiver motion. His skeptical scrutiny of G.M.C.'s friend, who said the video depicted Mary's head banging against a wall, the victim's credibility, and the motives and conduct of the victim's family went beyond review of the prosecutor's decision for abuse of discretion. The judge also accorded great weight to the fact that G.M.C. might have reasonably believed that Mary wanted to engage in sexual intercourse—without taking into consideration her level of intoxication—essentially accepting G.M.C.'s defense theory as would the finder of fact at a trial. Rather than focusing on whether the prosecutor's consideration of the statutory factors supported the application, the judge decided the case for himself.

G.M.C. was sixteen at the time the event occurred. That the juvenile came from a good family and had good test scores we assume would not condemn the

juveniles who do not come from good families and do not have good test scores from withstanding waiver applications. Whether or not the State can prove its case beyond a reasonable doubt is a question best left to another day.

The State's memorandum addressed every statutory element. The prosecutor's decision was patently not one that the judge would have reached, but that is not the test. The test is whether the State, which obviously believed Mary's description of the events to the minimum level necessary for the filing of charges, was mistaken in its judgment. The memorandum in support of waiver did not consider any irrelevant factors, only those included in the statute. The decision to seek waiver did not amount to a clear error in judgment. See V.A., 212 N.J. at 22.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0223-18T4