**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0560-19T4

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

ROBERT T. DAKAKE,

     Defendant-Respondent.

_____

Argued telephonically April 1, 2020 —
Decided April 30, 2020

Before Judges Whipple and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No 19-05-1216.

Frank J. Ducoat, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for appellant (Theodore N. Stephens II, Acting Essex County Prosecutor, attorney; Frank J. Ducoat, of counsel and on the briefs).

Alissa D. Hascup argued the cause for respondent (Alissa D. Hascup, attorney; Jeff Edward Thakker, of counsel; Alissa D. Hascup, on the brief).

PER CURIAM

The State appeals from a September 26, 2019 order admitting defendant into the Essex County pretrial intervention program (PTI). We affirm.

In 2019, defendant was arrested, charged, and indicted for third-degree possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10(a), and third-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(b)(13), after Cedar Grove police were alerted to a shipment of illegal narcotics destined for an Andrew Picarelli at a UPS store. Police confirmed the UPS postal box was registered to Picarelli, who was employed at Gold's Gym in Totowa. They opened the package and confirmed it contained illegal anabolic steroids and testosterone in powder form, packaged in clear plastic bags and packed within two black plastic bags marked creatine monohydrate. Police photographed the narcotics before repackaging and placing them back into the postal box.

The next day UPS notified Picarelli the package arrived and police observed defendant enter the UPS store, open Picarelli's box, retrieve the package receipt, and hand it to the store's owner who then gave defendant the package. Police confronted defendant, ordered him to surrender the package,

and he complied.  When asked if he knew why police stopped him, defendant volunteered it was because of illegal steroids in the package.

A search incident to defendant's arrest revealed $5100 in cash, which was seized as suspected narcotics proceeds.  Police Mirandized defendant, who agreed to answer questions.  He then admitted he placed the order for the steroids and testosterone and was selling the substances for profit.  He stated the cash was from his disability income and savings, not the sale of steroids.

In May 2019, the Essex County Probation Department recommended defendant's admission into PTI.  However, the prosecutor rejected the application in a June 2019 letter setting forth her reasoning.  Nearly a month later, defense counsel requested the State reconsider and appealed the denial to the Law Division.

The facts presented to the judge revealed defendant was forty-six years old with no prior criminal history.  Defendant dropped out of high school in eleventh grade to work for his father's business and then obtained a GED.  He maintained full-time employment as a unionized iron worker, working towards becoming a journeyman's book.  Defendant paid alimony and child support to his wife and two children from a prior marriage.

A-0560-19T4

Defendant began using anabolic steroids in 2007. He was diagnosed with multiple mental health disorders, including severe substance abuse disorder, body dysmorphia, post-traumatic stress disorder, obsessive-compulsive disorder, and generalized anxiety. In 2017, the steroid use caused him to suffer an aortic aneurysm, which required an emergent cardiac procedure. In 2018, defendant had shoulder surgery, was unable to return to work, and received disability benefits. He then began purchasing powdered steroids online from an overseas source, which he sold to another individual, who would pay him in the form of money and injectable steroids for defendant's own use.

Defendant also revealed he commenced psychological therapy less than two weeks after his arrest to address his mental health and addiction issues and was making progress. The evidence, which included a report from his treating therapist, explained he suffered emotional and physical abuse by his father during his childhood and turned to bodybuilding as a means of gaining his father's approval, and the bodybuilding led to the steroid abuse, body dysmorphia, the need for surgeries, and subsequent cycle of addiction.

Pursuant to these facts, the prosecutor's PTI rejection letter concluded N.J.S.A. 2C:43-12(e) factors one, two, seven, fourteen, and seventeen

outweighed factors three, nine, thirteen, and sixteen, which favored defendant's admission to PTI.[1]  The prosecutor concluded as follows:

---

1.  The N.J.S.A. 2C:43-12(e)factors are as follows:

(1) The nature of the offense;

(2) The facts of the case;

(3) The motivation and age of the defendant;

(4) The desire of the complainant or victim to forego prosecution;

(5) The existence of personal problems and character traits which may be related to the applicant's crime and for which services are unavailable within the criminal justice system, or which may be provided more effectively through supervisory treatment and the probability that the causes of criminal behavior can be controlled by proper treatment;

(6) The likelihood that the applicant's crime is related to a condition or situation that would be conducive to change through his participation in supervisory treatment;

(7) The needs and interests of the victim and society;

(8) The extent to which the applicant's crime constitutes part of a continuing pattern of anti-social behavior;

(9) The applicant's record of criminal and penal violations and the extent to which he may present a substantial danger to others;

A-0560-19T4

Despite some limited positive factors, PTI is not the appropriate remedy where the judgment of conviction is for this serious drug offense.

_____

(10) Whether or not the crime is of an assaultive or violent nature, whether in the criminal act itself or in the possible injurious consequences of such behavior;

(11) Consideration of whether or not prosecution would exacerbate the social problem that led to the applicant's criminal act;

(12) The history of the use of physical violence toward others;

(13) Any involvement of the applicant with organized crime;

(14) Whether or not the crime is of such a nature that the value of supervisory treatment would be outweighed by the public need for prosecution;

(15) Whether or not the applicant's involvement with other people in the crime charged or in other crime is such that the interest of the State would be best served by processing his case through traditional criminal justice system procedures;

(16) Whether or not the applicant's participation in pretrial intervention will adversely affect the prosecution of codefendants; and

(17) Whether or not the harm done to society by abandoning criminal prosecution would outweigh the benefits to society from channeling an offender into a supervisory treatment program.

A-0560-19T4

> Be assured that the State has already considered defendant's age, employment history, family obligations, and absence of any prior criminal history. . . . [D]efendant does possess some positive qualities, including, primarily the absence of any prior criminal record of any kind. Nonetheless, these admirable qualities did not prevent him from diving head first into illegal narcotics possession and distribution.

On defendant's appeal to the Law Division, the prosecutor noted defendant withheld information from the probation department in the initial PTI application related to his physical maladies and addiction to steroids, and argued his purpose was to deflect responsibility for his actions.

Judge Arthur J. Batista heard the appeal and issued a comprehensive thirteen-page written decision overruling the denial of PTI. He concluded the State's decision was clear error, did not consider the applicable factors, and deviated from the purpose of PTI.

The judge found additional factors applied, namely, five, six, eight, and twelve, which favored PTI. He concluded factor five applied because the supervisory treatment offered by PTI, as opposed to a criminal prosecution, would benefit defendant in addressing his addiction, mental health and physical disorders, and employment issues. He found factor six applicable because defendant made progress in treatment. He concluded factors eight and twelve

A-0560-19T4

were applicable because defendant had no criminal history and committed a non-violent offense.

The judge also found the State clearly misapplied mitigating factor three because it did not consider defendant's motives, which were to support a twenty-year addiction to anabolic steroids, caused by mental and physical health issues, which left him struggling to meet his financial obligations. The judge rejected the State's rationale that defendant withheld his history of trauma and addiction to "shirk responsibility." To the contrary, the judge explained

> [d]efendant in this case supplied information to the prosecutor that would allow them to consider what the statute asks the prosecutor to consider when reviewing a PTI application. To then use this information against the [d]efendant to claim that he is not accepting responsibility or trying to avoid blame for his action is contrary to the purposes and functions of the PTI program.

On this appeal, the State raises the following points:

POINT I

THE JUDGE BELOW SUBSTITUTED HIS JUDGMENT FOR THE PROSECUTOR'S WHEN HE ADMITTED DEFENDANT INTO THE PTI PROGRAM OVER THE STATE'S OBJECTION.

    A.    PTI & Standard of Review.

B. The Prosecutor's Thorough Consideration, And Ultimate Rejection, Of Defendant's PTI Application.

      i.     The first rejection letter.

      ii.    The second rejection letter.

C. The Law Division's Decision Admitting Defendant Into PTI.

D. The Judge Overstepped His Bounds And Substituted His Judgment For The Prosecutor's When He Admitted Defendant Into The PTI Program Over Her Objection.

The decision to admit a defendant to PTI is a "'quintessentially prosecutorial function.'" State v. Roseman, 221 N.J. 611, 624 (2015) (quoting State v. Wallace, 146 N.J. 576, 582 (1996)). Thus, the scope of judicial review of a prosecutor's determination is severely limited. State v. Nwobu, 139 N.J. 236, 246 (1995); State v. Hermann, 80 N.J. 122, 127-28 (1979). Prosecutors have wide latitude in deciding whom to divert into the PTI program and whom to prosecute. Nwobu, 139 N.J. at 246. "Reviewing courts must accord the prosecutor 'extreme deference.'" State v. Waters, 439 N.J. Super. 215, 225-26 (App. Div. 2015) (quoting Nwobu, 139 N.J. at 246). "We must apply the same standard as the trial court. Therefore, we review the [trial court's ruling] of the prosecutor's decision de novo." Id. at 226.

A reviewing court may order a defendant into PTI over a prosecutor's objection only if the defendant "'clearly and convincingly establish[es] that the prosecutor's refusal to sanction admission into the program was based on a patent and gross abuse of . . . discretion . . . .'" Wallace, 146 N.J. at 582 (second alteration in original) (quoting State v. Leonardis, 73 N.J. 360, 382 (1977)). An abuse of discretion is "manifest if defendant can show that a prosecutorial veto (a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment." Wallace, 146 N.J. at 583 (quoting State v. Bender, 80 N.J. 84, 93 (1979)). "In order for such an abuse of discretion to rise to the level of 'patent and gross,' it must further be shown that the prosecutorial error complained of will clearly subvert the goals underlying [PTI]." Bender, 80 N.J. at 93.

Having reviewed the record and considered the State's arguments, we affirm for the reasons expressed in Judge Batista's opinion. Defendant presented circumstances, which clearly warranted admission to PTI on these third-degree charges. The information defendant allegedly withheld only supported his admission to PTI and the State's argument to the contrary is unpersuasive. We

10

agree with the judge's conclusion the decision to prosecute in this case met the "clear error in judgment" standard and ignored the purpose of PTI.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0560-19T4