**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0266-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

MATTHEW E. HUSSEY,

     Defendant-Appellant.

_____

Submitted January 16, 2024 – Decided April 5, 2024

Before Judges Gilson and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No: 21-05-0290.

Joseph E. Krakora, Public Defender, attorney for appellant (Alyssa A. Aiello, Assistant Deputy Public Defender, of counsel and on the briefs).

Raymond S. Santiago, Monmouth County Prosecutor, attorney for respondent (Monica Lucinda Do Outeiro, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Matthew Hussey appeals from the Law Division's August 26, 2022 order denying his motion for admission into the pre-trial intervention program (PTI) after being rejected by the Monmouth County Prosecutor's Office (Prosecutor's Office). We affirm.

I.

We derive the following facts from the motion record. In July 2019, defendant and his friend drove from New York to Asbury Park to attend a concert. Upon arriving in Asbury Park, defendant parked his car, and the two began drinking alcohol. Shortly thereafter, Asbury Park police received a report that two "teenagers" were drinking alcohol in a gray car with a New York license plate near 510 Monroe Avenue.

Officer James Crawford was dispatched to investigate the report. Upon arrival, he observed a car matching the report's description and a young male exiting the driver's side of the car, later identified as defendant. As Crawford approached the car and began speaking with defendant, he observed a young male in the passenger seat "moving around inside of the car." The passenger then exited the passenger's side of the car with a can in his hand. Crawford walked around to the passenger's side of the car and saw an alcoholic beverage can rolling away from the passenger and spilling liquid onto the ground.

2

Crawford asked both young males for their identification to determine if they were of legal drinking age, which revealed that both males were under the age of twenty-one. Crawford then searched the car for additional alcohol. Crawford saw a black tote bag on the floor of the car, believing that it contained more alcohol; however, the search was fruitless. He observed the center console was "ajar" and possibly contained alcohol. Immediately upon opening the center console, he saw a grinder, a scale, and rolling papers. As Crawford removed the scale, he saw a clear plastic bag with a tin foil fold inside of the scale. When asked what was inside the tin foil, defendant replied that it was "acid," the street name for hallucinogen lysergic acid diethylamide (LSD). According to Crawford, the passenger seemed surprised.

As Crawford continued to remove the remaining items from the center console, he also observed a pink zip-loc bag. When Crawford asked what was inside the bag, defendant replied, "I think that's ecstasy." Crawford opened the pink bag and saw a clear plastic baggie with money signs on the outside and a brownish crystalline substance "suspected" to be ecstasy or "molly" on the inside. During the search of the car, Crawford also found an open and partially consumed clear glass bottle of rum behind the passenger's seat.

A-0266-22

Crawford radioed for additional police officers. While waiting for "backup" to arrive, defendant began asking Crawford questions. After a moment, defendant said, "well, it's mine," referring to the items found in the center console. Defendant was placed under arrest and he was searched. Crawford found a "fake" Delaware identification in defendant's wallet. When Officer Yannazzone arrived, he escorted defendant to Crawford's patrol car. Crawford completed searching defendant's car and found a "small amount" of marijuana in the pocket of the driver's door and a silver flask containing liquid that smelled like alcohol. Crawford secured those items in his police car.

As Crawford was walking back towards defendant's car, Yannazzone was standing near the front passenger door when he observed a plastic vacuum sealed bag "sticking out," "possibly" filled with psilocybin mushrooms from under the passenger's seat. Crawford also secured this item in his patrol car. While sitting in the back of Crawford's patrol car, defendant stated: "Now you guys are going to think I'm selling drugs."

A grand jury indicted defendant on charges of third-degree possession of LSD, N.J.S.A. 2C:35-10(a)(1); first-degree possession of LSD with intent to distribute, N.J.S.A. 2C:35-5(b)(6); third-degree possession of LSD with intent to distribute on or within 1,000 feet of school property, N.J.S.A. 2C:35-7;

4

second-degree possession of LSD with intent to distribute while on or within 500 feet of a public park, N.J.S.A. 2C:35-7.1; third-degree possession of psilocybin mushrooms, N.J.S.A. 2C:35-10(a)(1); third-degree possession of psilocybin mushrooms with intent to distribute, N.J.S.A. 2C:35-5(b)(13); third-degree possession of psilocybin mushrooms with intent to distribute on or within 1,000 feet of school property, N.J.S.A. 2C:35-7; second-degree possession of psilocybin mushrooms with intent to distribute while on or within 500 feet of a public park, N.J.S.A. 2C:35-7.1; third-degree possession of ecstasy, N.J.S.A. 2C:35-10(a)(1); and fourth-degree possession of a simulated document, N.J.S.A. 2C:21-2.1(d).

In July 2021, defendant applied for admission to the PTI program. In his application, defendant acknowledged that he was charged with "a crime(s) that has a presumption of incarceration or a mandatory minimum period of parole ineligibility." Defendant asserted: "The fact that the [p]rosecutor [was] only looking for probation and [was] not looking for a plea on the [first-]degree [charge] is a compelling reason to justify consideration of defendant's PTI application despite one charge being in the first[-]degree range."

On August 6, 2021, in a comprehensive letter, the Prosecutor's Office notified defendant that it "declined to consent" to defendant's admission into the

PTI program. It explained that defendant offered "nothing" other than the negotiated plea offer for noncustodial probation which did not establish extraordinary and compelling circumstances to overcome the "heavy" presumption against PTI admission. Relying upon State v. Nwobu, 139 N.J. 236, 252 (1995), it determined there was nothing in defendant's background that was "so extraordinary, unusual[,] or idiosyncratic as to justify admission/consideration of the application."

Defendant appealed the prosecutor's denial of his request for admission. On appeal to the trial court, defendant proffered new reasons why his application should be granted; namely, no prior criminal record, nonviolent criminal charges, his youth, his rehabilitation potential, his history of drug abuse, and his role as caretaker for his grandparents. The Prosecutor's Office maintained its position.

On November 18, 2021, after hearing oral argument, the trial court denied defendant's motion, finding there was no "patent or gross abuse" of discretion by the prosecutor. In an oral opinion, the court reasoned the Prosecutor's Office took into consideration the "entirety" of defendant's application and the "compelling mitigating" reasons in offering defendant probation. The court explained that defendant's role as a caretaker for his grandparents was "not

A-0266-22

enough" but was also taken into consideration by the Prosecutor's Office. The court concluded that there was "nothing in this record that shows any compelling and extraordinary circumstances . . . for which the Prosecutor's Office should have under these circumstances have allowed this defendant to apply to PTI. factors."

Thereafter, on December 27, 2021, defendant pleaded guilty to third-degree possession of mushrooms with intent to distribute, N.J.S.A. 2C:35-5(b)(13). During the plea colloquy, defendant admitted the psilocybin mushrooms belonged to him, and he planned to "share or distribute" the mushrooms but not sell them. On August 26, 2022, the court sentenced defendant to one year probation, ordered him to obtain substance abuse testing, counseling, and treatment, and imposed mandatory fines and penalties.

## II.

Defendant appeals the denial of entry into PTI, arguing:

> POINT I
>
> A REMAND IS REQUIRED BECAUSE THERE WERE EXTRAORDINARY AND COMPELLING CIRCUMSTANCES TO JUSTIFY CONSIDERATION OF DEFENDANT'S PTI APPLICATION: DEFENDANT, A COLLEGE STUDENT WITH NO PRIOR RECORD, WAS FOUND IN POSSESSION OF DRUGS AND DRUG PARAPHERNALIA, INCLUDING ONE TINFOIL FOLD CONTAINING

BLOTTER PAPER WITH LSD ON IT; ALTHOUGH DEFENDANT WAS ARRESTED FOR THIRD-DEGREE POSSESSION OF LSD, HE WAS INDICTED FOR FIRST-DEGREE POSSESSION WITH INTENT TO DISTRIBUTE BASED ON THE WEIGHT OF THE BLOTTER PAPER.

A.    The "Serious Injustice" Standard Does Not Apply When the Charges Involve Nonviolent Drug Offenses That Were Not Part of a Continuing Criminal Enterprise [or] Organized Criminal Activity.

1.    The evolution of presumptions against admission.

2.    Because, unlike Guideline (3)I, neither the PTI statute nor court rules establish a presumption against admission for first- or second-degree crimes, the "serious injustice" standard does not apply where the offenses charges were not otherwise subject to a presumption against admission.

B.    Even If the "Serious Injustice" Standard [was] the Proper Standard, the Prosecutor Misapplied it In This Case.

C.    The Prosecutor's Refusal to Consent Cannot Stand Because "[t]he Record Directly Contradicts" the Prosecutor's "Bald Declarations" Regarding the Nature of the Charged Offenses "Were Sufficiently 'Extraordinary and Unusual'" to Justify Consideration of Defendant's Application for Admission to PTI.

Our review of a PTI rejection "is severely limited," and "serves to check only the 'most egregious examples of injustice and unfairness.'" State v. Negran, 178 N.J. 73, 82 (2003) (quoting State v. Leonardis, 73 N.J. 360, 384 (1997)); see also State v. Denman, 449 N.J. Super. 369, 376 (App. Div. 2017). "'PTI is essentially an extension of the charging decision, . . . the decision to grant or deny PTI is a "quintessentially prosecutorial function."'" State v. Johnson, 238 N.J. 119, 128 (2019) (citations omitted). "'As a result, the prosecutor's decision to accept or reject a defendant's PTI application is entitled to a great deal of deference.'" Ibid. (citation omitted). Thus, "[a] court reviewing a prosecutor's decision to deny PTI may overturn that decision only if the defendant 'clearly and convincingly' establishes the decision was a 'patent and gross abuse of discretion.'" Id. at 128-29 (quoting State v. Wallace, 146 N.J. 576, 583 (1996)).

A PTI application that requires prosecutor consent pursuant to Rule 3:28-1(d)(1) must "include a statement of the extraordinary and compelling circumstances that justify consideration of the application notwithstanding the presumption of ineligibility based on the nature of the crime charged and any prior convictions." R. 3:28-3(b)(1). In establishing compelling reasons for admission into PTI, "there must be a showing greater than that the accused is a

first-time offender and has admitted or accepted responsibility for the crime." Nwobu, 139 N.J. at 252.

To establish abuse of discretion, a defendant must show the prosecutor's denial of his or her PTI application "'(a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment.'" State v. Roseman, 221 N.J. 611, 625 (2015) (quoting State v. Bender, 80 N.J. 84, 93 (1979)). Abuse of discretion rises to the level of patent and gross when the defendant shows the prosecutor's denial "'clearly subvert[s] the goals of [PTI].'" Ibid. (quoting Bender, 80 N.J. at 93).

Having reviewed the record, we conclude that defendant's arguments lack merit. Prosecutor's Office considered defendant's sole reason articulated in his initial submission. Here, the record fully supports the denial of defendant's application. Simply put, a plea offer of noncustodial probation was insufficient to establish extraordinary and compelling circumstances to overcome the presumption against PTI admission. We also agree with the trial court's reasoning that defendant's belated assertion that he was a caretaker role fell short in establishing establish compelling circumstances. We conclude defendant has not established the Prosecutor's Office engaged in a patent and gross abuse of

discretion in denying his application for admission into PTI. We, therefore, see no reason to disturb the trial court's denial of defendant's admission into the PTI program.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0266-22