**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3237-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

THOMAS R. SANTO,

    Defendant-Appellant.

_____

Submitted June 5, 2025 – Decided June 16, 2025

Before Judges Mawla, Natali, and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment Nos. 22-11-1117 and 24-02-0134.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Rachel Glanz, Assistant Deputy Public Defender, of counsel and on the brief).

Yolanda Ciccone, Middlesex County Prosecutor, attorney for respondent (Elizabeth K. Gibbons, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Thomas R. Santo appeals from an April 17, 2024 order denying him admission into pre-trial intervention (PTI).  He also challenges his sentence.  We affirm.

On April 27, 2022, a large, public mural commissioned by multiple local nonprofit groups entitled "Home Is Where We Make It" was erected in the Borough of Highland Park.  The mural depicted a man and two women of color.  One of the women was wearing a hijab—a head covering associated with the Islamic faith.  The mural intended to display the Borough's commitment to tolerance, diversity, and efforts to rehouse asylum seekers and refugees.

Two days later, the mural was vandalized twice on the same day.  At 7:00 a.m., surveillance video recorded defendant papering over the Muslim woman's eyes, nose, and mouth.  Defendant returned at 9:00 p.m. and painted the Star of David over the Muslim woman's face using blue spray paint and sprayed "U.S.A." on her head using rust remover.

Highland Park police interviewed defendant.  He waived his Miranda[1] rights and admitted to vandalizing the mural.  Defendant told police he was angered after reading comments made by the artist in an interview.  Specifically, her statements the mural "means [people of diverse backgrounds] are welcome

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

to create a home here and 'we' the community will support [them] making [their] home here with us."  He also took offense to the artist's statements that there was "too much 'whiteness' in society."  Defendant claimed she "lacked knowledge" about the September 11 Terrorist Attacks.  Therefore, the vandalism was intended to be a "f[**k] you" and a "zinger" to the artist.  In November 2022, a grand jury indicted defendant with fourth-degree bias intimidation, N.J.S.A. 2C:16-1(a), predicated on criminal mischief, a disorderly persons offense, N.J.S.A. 2C:17-3(a)(1).

On December 12, 2022, defendant attempted to shoplift a cart full of groceries valued at $266.15 from an East Brunswick supermarket.  Store employees confronted and stopped defendant.  When questioned, he told police he resorted to theft because he could not afford groceries.

In February 2023, defendant applied for admission to PTI.  During his interview, he repeated the vandalism intended to convey a "f[**k] you."  He also reiterated the shoplifting was borne of financial hardship.  Notably, he expressed remorse for the shoplifting attempt but not the vandalism.

Probation "guardedly recommend[ed]" PTI admission.  The recommendation relied on the fact none of defendant's offenses were violent or assaultive.  However, the probation officer noted defendant held "strong views on Muslims, immigrants, and 9/11" that could "appear alarming to some people."

However, defendant's actions "did not physically harm . . . [or] endanger anyone within the community." He was also a single father who had been unemployed for a period of nine years. The probation officer attributed defendant's shoplifting attempt to "a poor decision."

The probation report included information about defendant's mental health and noted he admitted "he would benefit from individual therapy." The probation officer concluded "poor judgment, a disregard for the property of others, a complete lack of forethought, past traumas, and a disregard for the consequence of illegal activity could all be considered [as] contributing factors[,] which led to his involvement in the instant offense," and PTI would "likely deter future criminal and disorderly conduct."

The Middlesex County Prosecutor rejected the probation recommendation. Assistant Prosecutor Alexander D. Battey, Jr. issued a detailed letter applying the factors in N.J.S.A. 2C:43-12(e)(1) to -(17), and explaining why defendant should not be admitted to PTI.

Factor one, N.J.S.A. 2C:43-12(e)(1), did not favor PTI because although defendant's most serious charge was a fourth-degree crime, "the nature of bias intimidation and the heightened penalties contained within N.J.S.A. 2C:16-1 evince the seriousness of this offense and the gravity with which our Legislature deigned to criminalize this behavior." Indeed, N.J.S.A. 2C:16-1(e) does not

permit a merger for bias intimidation with any conviction of an underlying offense or vice versa.

The prosecutor noted a bias crime conviction "must stand alone" because punishing it "curtails criminal behavior by, among others, the racists, homophobes, transphobes, and misogynists in our community." The statute contains degree enhancement for hate crimes reflecting "the seriousness with which such crimes are considered." There are also "a particular set of penalties" the court can impose at sentencing for bias intimidation conviction. The prosecutor gave this factor significant weight.

Factor two, N.J.S.A. 2C:43-12(e)(2), did not favor defendant's admission to PTI. Although the offense favored a "traditional prosecution," there was no per se bar on PTI for those charged with bias intimidation. However, the facts here were "particularly egregious" because

> [d]efendant imprinted his personal xenophobic ideology over an apolitical and entirely secular message. By targeting a public work of art just days after its completion, defendant ensured that his actions would be amplified, and everyone would know how he felt about refugees and . . . Muslims. Defendant's actions victimized not just a single person or group of people, but all of Highland Park. The mural belongs to the town and a community that fosters tolerance and acceptance. A community that defendant rejects and has no place in. Nor was this crime a momentary lapse of judgment manifesting itself in a spontaneous expression of hate. . . . [D]efendant planned this crime.

He read comments by the artist about the mural and it made him angry. He drove past a portrait of a "giant Muslim head" and he grew even angrier. And yet even after he first spraypainted USA on a painting of refugees and covered up the Muslim woman's face with paper, he was not done. He would return twelve hours later, more than enough time for someone to come to their senses and realize the error of their ways. As defendant would tell police, he needed to find just the perfect shade of blue for the Stars of David he would later spray over the face of the Muslim woman.

The prosecutor noted "[d]efendant availed himself of neither his right to peacefully protest [n]or speech. Instead, . . . [his] sole purpose of spreading his message [was] intolerance." This factor carried significant weight.

Factor three, N.J.S.A. 2C:43-12(e)(3), did not favor PTI. Defendant showed no concern for his conduct and offered no apologies "to the refugees he says, through his vandalism, are not welcome. Nor to the Muslims whom he says through his graffiti have no place in the town he lives. Nor to the Jews, whose symbol he co[-]opted in an attempt to inflame division among the faithful."

Notably, defendant was capable of remorse because he was "very sorry that he attempted" to shoplift the groceries. However, the prosecutor observed "[t]herein lies the problem. . . . [D]efendant is capable of remorse, but only selectively offers it for a crime he believes is wrong, like petty theft. Defendant's unwillingness to offer any sign that he comprehends the gravity of

6

A-3237-23

his vandalism speaks volumes about his motivations." PTI and its limited supervision were inappropriate because defendant appeared incapable of rehabilitation.

Although the State empathized with defendant's personal circumstances, including his financial difficulties "[t]he negative impact and widespread harm of defendant's vandalism dwarfs that of his attempted shoplifting." The prosecutor gave this factor moderate weight.

The fourth factor, N.J.S.A. 2C:43-12(e)(4), was inapplicable. The prosecutor gave the fifth factor, N.J.S.A. 2C:43-12(e)(5), slight weight. Although the record contained evidence of defendant's mental health problems and financial difficulties, "[t]here is nothing to suggest that his crime was caused by anything other than his deep-seeded hatred of Muslims." At fifty-five years of age, defendant was unlikely to change his extreme attitudes. For these reasons as well, the prosecutor gave factor six, N.J.S.A. 2C:43-12(e)(7), which considered whether the crime was related to a condition and whether defendant would be conducive to supervisory treatment, little weight.

Factor seven, N.J.S.A. 2C:43-12(e)(7), did not favor PTI because this was not a victimless crime. Rather, "our pluralist society was defendant's victim." Defendant's defacement of the mural meant that "[f]orevermore, that public work of art will be remembered as one that was spraypainted with Islamophobia

right after it was installed." The prosecutor gave this factor "tremendous weight." Likewise, factor eight, N.J.S.A. 2C:43-12(e)(8), did not support PTI because defendant's crime was part of a continuing pattern of anti-social behavior.

Factor nine, N.J.S.A. 2C:43-12(e)(1), supported a traditional prosecution because defendant had "amassed five convictions," albeit for non-indictable offenses as a part of his criminal record.[2] Although defendant's convictions involved danger or violence, they did not show he was a substantial danger to others. The prosecutor gave this factor moderate weight. Likewise, factor ten, N.J.S.A. 2C:43-12(e)(10), was not given "much weight" because defendant's crimes were not physically assaultive or violent and had a low likelihood of causing sectarian violence. The prosecutor also gave factor twelve, N.J.S.A. 2C:43-12(e)(12), minimal weight because although defendant was previously convicted of a violent offense, "the State's primary concern is not that defendant may be a violent individual."

Factor eleven, N.J.S.A. 2C:43-12(e)(11), did not favor PTI because there was nothing to indicate a traditional prosecution would exacerbate a social problem. "To the contrary, admission into PTI would mitigate the seriousness

---

[2] The prosecutor issued an amendatory letter addressing this factor and deleting reference to an assertion defendant had been convicted of an indictable offense.

of what [defendant] did and could embolden others to act in a similar manner and expect the leniency of diversion despite the gravity of their harm."

Factor thirteen, N.J.S.A. 2C:43-12(e)(13), was given "little to no weight" because defendant and his offenses were unrelated to organized crime. However, factor fourteen, N.J.S.A. 2C:43-12(e)(14), "strongly support[ed]" a prosecution to specifically deter defendant and generally deter others from committing these offenses. Doing otherwise would "reward this type of wanton behavior . . . [and] send a message to society that these types of crimes are not serious."

Factors fifteen, N.J.S.A. 2C:43-12(e)(15), and sixteen, N.J.S.A. 2C:43-12(e)(16), supported PTI because defendant acted alone. However, factor seventeen, N.J.S.A. 2C:43-12(e)(17), favored a prosecution because the societal harm done by defendant outweighed the benefits of placing him in supervisory treatment. If the case were not prosecuted, "the public may not recognize the seriousness of the offenses . . . or [it may] inappropriately convey that such behavior is acceptable."

The prosecutor concluded factors one, two, seven, fourteen, and seventeen favored prosecution and qualitatively outweighed the factors favoring admission to PTI. In February 2024, defendant moved to compel admission into PTI. A

few weeks after the motion was filed, a grand jury indicted him on fourth-degree shoplifting, N.J.S.A. 2C:20-11(b)(1).

Defendant supported his motion with a letter from his psychiatrist diagnosing him with "Bipolar I, Post[-]Traumatic Stress Disorder, and Anxiety." The doctor certified his Bipolar I "can affect his judgment at times and cause poor impulse control." Defendant argued the State abused its discretion because it failed to consider how his mental health impacted his conduct.

Defendant also claimed he showed insight into the wrongfulness of his conduct because he immediately took responsibility for his conduct when he was questioned by officers. This showed his amenability to rehabilitation.

Defendant asserted he lacked the intent to commit a bias crime because the evidence showed his actions were a practical joke and a "zinger" aimed at the mural's artist. He claimed his actions were protected under the First Amendment. Instead, the State criminalized his conduct by improperly ascribing hateful intentions to it.

On April 17, 2024, the trial judge issued a written statement of reasons. Citing State v. Dalglish, 86 N.J. 503, 509 (1981), she found defendant failed to meet his burden of clearly and convincingly showing the prosecutor's decision was a patent and gross abuse of discretion.

10

Indeed, the prosecutor considered defendant's mental health when he assessed and weighed N.J.S.A. 2C:43-12(e)(5) and (6). "[T]he State gave rational arguments for its assessment of . . . defendant in the circumstances presented."

The judge found the State did not reject defendant based on "an abstract consideration of [b]ias crimes without regard to [his] specific actions." Moreover, the State acknowledged there was no per se bar to PTI for defendants accused of bias intimidation and the denial of PTI was instead based on the "particularly egregious" facts of this case. The judge rejected defendant's assertion his actions were constitutionally protected free speech. Pursuant to Dalglish, she concluded

> [t]he record adequately supports the conclusion that the State has thoroughly considered [all the] relevant factors, that consideration has been reflected in written [format] allowing for meaningful review, and the decision was not based on irrelevant or inappropriate factors, and . . . did not constitute a clear error in judgment. Further, the failure to admit . . . defendant into PTI does not subvert the goals of the program.

Defendant subsequently pled guilty to the offenses charged under both indictments. As part of the negotiated plea, the State recommended concurrent sentences of probation.

At sentencing, the trial judge referenced the presentence report and noted defendant had "some contact with our criminal justice system. There was a local ordinance violation, three municipal court convictions, a variety of offenses ranging from simple assault to disorderly conduct to resisting arrest in the instan[t] offense and then a conviction out of New York for resisting arrest." She found defendant had "received the benefit of fines, fees, [and] probation."

The judge found aggravating factor three, N.J.S.A. 2C:44-1(a)(3), concluding that "given the record, although dated, there is some risk of re[-]offense." She also found aggravating factor nine, N.J.S.A. 2C:44-1(a)(9), because there was "the need to deter specifically this defendant but also general deterrence given the nature . . . of the bias intimidation matter."

The judge gave mitigating factor seven, N.J.S.A. 2C:44-1(b)(7), whether the "defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present offense," moderate consideration. Referring to his criminal history, she noted his offenses dated back to 2006 and his most recent offense in New York, would have had a disposition date in 2012. On the New York offense, defendant received "a three-year term of probation and [was] discharged in 2014."

The judge also found mitigating factor ten, N.J.S.A. 2C:44-1(b)(10), that "defendant is particularly likely to respond affirmatively to probation

12

treatment." Although there was no information whether defendant's discharge from probation in 2014 was successful, she "g[a]ve him the benefit that he has something to learn from probation and will respond affirmatively given what is outlined in the presentence report in terms of his upbringing and his mental health challenges."

The judge accorded aggravating factor nine "great weight" and concluded the aggravating factors outweighed the mitigating factors. She noted the plea agreement was negotiated and found it "was ultimately fairly negotiated[ and] within the authorized range in accordance with law."

In accordance with the plea agreement, the judge sentenced defendant to concurrent terms of two years' probation on the bias intimidation conviction and one year of probation for the shoplifting conviction. Defendant was also ordered to complete sensitivity training on diverse communities as a condition of his probation.

Defendant raises the following points on appeal:

POINT I

THE PROSECUTOR'S REJECTION OF DEFENDANT'S ADMISSION INTO [PTI] WAS AN ARBITRARY, PATENT AND GROSS ABUSE OF DISCRETION WHICH MUST BE CORRECTED BY THIS COURT.

13

A. The Prosecutor's Rejection Amounted To A Clear Error In Judgment, Implicitly Invoking A Per Se Bar To PTI For Defendants Charged With Bias Intimidation.

B. The Prosecutor Failed To Adequately Consider How [Defendant]'s Mental Health Struggles Contributed To His Conduct.

POINT II

THE MATTER SHOULD BE REMANDED FOR RESENTENCING BECAUSE THE SENTENCING COURT FAILED TO PROVIDE A FACTUAL BASIS FOR AGGRAVATING FACTORS THREE AND NINE AND ERRONEOUSLY FAILED TO APPLY MITIGATING FACTOR FOUR.

I.

The decision to admit a defendant to PTI is a "quintessentially prosecutorial function." State v. Roseman, 221 N.J. 611, 624 (2015) (quoting State v. Wallace, 146 N.J. 576, 582 (1996)). Thus, the scope of judicial review of a prosecutor's determination is severely limited. State v. Nwobu, 139 N.J. 236, 246 (1995); State v. Hermann, 80 N.J. 122, 127-28 (1979). Prosecutors have wide latitude in deciding whom to divert into the PTI program and whom to prosecute. Nwobu, 139 N.J. at 246. "Reviewing courts must accord the prosecutor 'extreme deference.'" State v. Waters, 439 N.J. Super. 215, 225-26 (App. Div. 2015) (quoting Nwobu, 139 N.J. at 246). "We must apply the same

14

standard as the trial court.  Therefore, we review the [trial court's ruling] of the prosecutor's decision de novo."  Id. at 226.

A reviewing court may order a defendant into PTI over a prosecutor's objection only if the defendant "clearly and convincingly establish[es] that the prosecutor's refusal to sanction admission into the program was based on a patent and gross abuse of . . . discretion."  Wallace, 146 N.J. at 582 (omission in original) (quoting State v. Leonardis, 73 N.J. 360, 382 (1977)).  An abuse of discretion is "manifest if defendant can show that a prosecutorial veto (a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment."  Id. at 583 (quoting State v. Bender, 80 N.J. 84, 93 (1979)).  "In order for such an abuse of discretion to rise to the level of 'patent and gross,' it must further be shown that the prosecutorial error complained of will clearly subvert the goals underlying [PTI]."  Ibid. (quoting Bender, 80 N.J. at 93).

Pursuant to these principles and having considered the arguments raised by defendant on appeal in light of the record, we affirm for the reasons expressed in the prosecutor's thorough, detailed PTI rejection, and the trial court's opinion. Defendant's arguments challenging his exclusion from PTI lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

15

## II.

Our review of a trial court's sentence is guided by an abuse of discretion standard. State v. Torres, 246 N.J. 246, 272 (2021). We will affirm a sentence so long as: the sentencing guidelines were followed; the aggravating and mitigating factors were based upon competent, credible evidence in the record; and the application of the guidelines to the facts of the case do not shock the judicial conscience. State v. Case, 220 N.J. 49, 65 (2014); see also State v. Bolvito, 217 N.J. 221, 228 (2014). "A sentence imposed pursuant to a plea agreement is presumed to be reasonable because a defendant voluntarily '[waived] . . . [their] right to a trial in return for . . . recommendations as to sentence and the like.'" State v. Fuentes, 217 N.J. 57, 70-71 (2014) (first alteration and omission in original) (quoting State v. Davis, 175 N.J. Super. 130, 140 (App. Div. 1980)).

At the outset, we note defendant did not argue mitigating factor four, N.J.S.A. 2C:44-1(b)(4), that "[t]here were substantial grounds tending to excuse or justify the defendant's conduct, though failing to establish a defense." Even so, the record does not support a finding this mitigating factor would apply. His clear lack of remorse regarding the bias intimidation offense, along with the absence of any proof his background or mental health issues caused him to commit this offense, do not convince us this mitigating factor would apply.

16

In all other respects, the sentencing decision was a sound exercise of discretion, and the judge's findings are supported by the record. Defendant's sentence does not shock the judicial conscience.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division